Dorothy Jean POOLE, Plaintiff–Appellee,

v.

The KROGER COMPANY,
Defendant–Appellant.

Supreme Court of Tennessee.

Sept. 8, 1980.

Thomas L. Reed, Jr., Reed, Rogers & Trail, Murfreesboro, for plaintiff–appellee.

John R. Rucker, Richard W. Rucker, Murfreesboro, for defendant–appellant.

## OPINION

FONES, Justice.

Plaintiff's suit for personal injuries sustained when she fell on defendant's premises resulted in a jury verdict of $10,000, an amount approved by the trial judge. On appeal the majority of the Court of Appeals' panel set aside the verdict "because of extreme inadequacy . . . evidencing misconduct by the jury," and remanded for a new trial on the issue of damages only. The dissenting judge was of the opinion that material evidence existed in the record to support the jury award approved by the trial judge and would have affirmed the judgment of $10,000. We agree with the dissent.

### I.

Plaintiff took her father to the Kroger Store in Murfreesboro to shop for her parents and pick up a few items for herself. Her father completed his shopping and was taking the cart to the check–out stand while plaintiff went to the frozen food case to get some "beef things." Defendant's employees had discovered a water leak from one of the frozen food compartments earlier in the day, had periodically mopped up the water, and had left a mop bucket sitting in the area of the water leak. The mop bucket was approximately two feet wide and two and one–half feet tall and had a mop standing in it. On one side of the mop bucket were the words, "Wet Floor–Caution," but no one could say in which direction that side of the bucket was facing at the time plaintiff fell.

In approaching the frozen food counter plaintiff "rounded an aisle" and slipped and fell, injuring her right knee. She denied seeing the mop bucket and mop or water on the floor prior to falling, but testified that her dress was wet when she arose from the floor.

Following the fall, on July 22, 1977, plaintiff was hospitalized for a period of seven days. On August 25, 1977, she returned to the hospital where a surgical incision of a torn cartilage was performed. She was admitted to the hospital again on September 8, 1977, with a diagnosis of thrombo phlebitis. After a twelve day stay in the hospital, she had therapy three times a week for a period of time. Plaintiff adduced expert medical testimony that the torn cartilage and thrombo phlebitis were causally related to the injury she sustained in the fall at defendant's store. Doctor McInnes testified that in his opinion she had a permanent

partial disability of the right lower extremity of ten percent.

It was stipulated that her medical expenses were $5,947.28 and that her life expectancy was 42.82 years. Plaintiff was not working at the time of the injury. She testified that she had quit her job at Cloverbottom Hospital but intended to go back to work at the end of the summer when her children returned to school. She could not recall her rate of pay at the Cloverbottom Hospital but at the time of the trial she was employed and earning $3.73 an hour. She contended, and there was supporting medical evidence, that her period of disability extended from the date of the accident to May 1, 1978.

## II.

We recently gave extensive consideration to the effect of the trial judge's approval of the amount of a jury award upon the scope of appellate review of alleged excessiveness or inadequacy of verdicts. In *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn. 1980), released July 28, 1980, this Court expressly held that the trial judge's approval of the amount of the jury's verdict invokes the material evidence rule, just as it does with respect to all other factual issues upon which appellate review is sought, and that "[a]ll of the evidence in the record that tends to support the amount of the verdict should be given full faith and credit upon appellate review." As a reading of *Ellis* will disclose, that was not the announcement of a new rule but rather an express affirmance of a practice of Tennessee courts of many years duration.

■ In *Pitts v. Exxon*, 596 S.W.2d 830 (Tenn.1980), the Court held that jury verdicts found to be the result of passion, prejudice, or caprice solely on the grounds of excessiveness, as well as verdicts that are merely excessive, may be cured by remittitur. The trial judge has the same authority with respect to curing inadequate verdicts by additur, but in the case of inadequacy, the appellate courts have no express statutory authority to initiate an additur.

■ As the dissenting judge in the present case observed, if the jury verdict was below the range of reasonableness, established by the credible proof, the trial judge should have suggested an additur pursuant to *Smith v. Shelton*, 569 S.W.2d 421 (Tenn.1978), and *Jenkins v. Commodore Corp. Southern*, 584 S.W.2d 773 (Tenn.1979), or if he found the verdict to be within the range of reasonableness, but was dissatisfied with the verdict, he had the option of ordering a new trial, which he could have done without assigning any reason. *See James E. Strates Shows, Inc. v. Jakobik*, 554 S.W.2d 613 (Tenn.1977). In the present case we are entitled to assume that the trial judge found the verdict to be within the range of reasonableness and that he was satisfied with the verdict.

■ Thus, our review is limited to a determination of whether material evidence can be found in the record that would support an award of $10,000 as being at or above the lower limit of the range of reasonableness, giving full faith and credit to all of the evidence that tends to support that amount. This scope of review was more fully delineated in *Southern Railway Company v. Sloan*, 56 Tenn.App. 380, 407 S.W.2d 205 (1965), as follows:

"We have pointed out repeatedly that in reviewing a case on appeal, where the appeal is from a judgment based on a jury's verdict, we do not weigh the evidence to determine the preponderance thereof, nor do we decide the credibility of witnesses. *McAmis v. Carlisle*, 42 Tenn.App. 195, 300 S.W.2d 59. Our review is limited to a determination of whether there is any material evidence to support the verdict, and 'it [our review] must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict.' *D. M. Rose & Co. v. Snyder*, 185 Tenn. 499, 206 S.W.2d 897. And if

there is material evidence to support the verdict it must be affirmed. *City of Chattanooga v. Ballew*, 49 Tenn.App. 310, 354 S.W.2d 806, and numerous cases there cited." *Id.* at 387–88, 407 S.W.2d at 209.

■ The Court of Appeals relied upon *Loftis v. Finch*, 491 S.W.2d 370 (Tenn.App. 1972), a case in which the plaintiff had medical expenses and loss of wages of $1,954.96 plus pain and suffering; and the jury award was $1,500. Mrs. Loftis was a passenger in a vehicle that was struck from behind by the Finch vehicle. The vehicle in which Mrs. Loftis was riding burst into flames, trapping her inside. Another motorist broke the glass in the door, pulled her to safety, and extinguished her burning hair. She sustained burns, multiple cuts and bruises, and injuries to her back, neck and head. She was hospitalized for five days, was unable to work for two months, and wore a surgical collar for neck pain. Her physician expressed the opinion that she had a permanent partial disability of five percent.

Mrs. Loftis' medical expenses and her burned and lost property totaled $1,204.96. She was employed at the time of the accident at a salary of $375 per month so that her loss of earnings during the recovery period after the accident was $750. The total special damages of $1,954.96 represented an undisputed amount, yet the jury awarded her only $1,500. The *Loftis* Court noted that other elements of damage, such as her ordeal in the burning vehicle, her pain and suffering, and her permanent disability, existed but were apparently ignored by the jury.

Clear factual distinctions can be found between this case and *Loftis*. In the present case no proof exists of plaintiff's earning capacity prior to the accident. Assuming that she really intended to return to work on September 1, 1977, that she could have found a job, and that she was disabled for the full period to which she and the doctors testified, her loss of earnings based upon the prevailing minimum wage rates at the time totalled $3,402.80. Evidence existed, however, that she did not follow the doctor's recommendations with respect to exercising her injured leg, that her mental attitude toward the injury was not ideal, and that she had other medical problems not associated with traumatic injury during the alleged recovery period after the accident. Therefore, evidence and inferences could have been drawn upon which the jury could have found that the period of disability was not as extensive as asserted and that other health factors not related to the accident contributed to the length of her recovery period. In short, no figure can be assigned as an undisputed sum of loss of wages following the accident, and giving full faith and credit to plaintiff's proof, which is not the correct test, plaintiff's special damages did not exceed the jury verdict. It follows that some material evidence can be found to support the view that the jury awarded plaintiff several thousand dollars for pain and suffering and any permanent disability. Further, juries are not bound to accept expert medical opinion as to the nature or extent of a permanent disability of the type said to have been sustained by plaintiff.

The jury verdict in this case is admittedly low, but we cannot say that no material evidence exists to support the award as being at the lowest limit of the range of reasonableness and, therefore, we must affirm the judgment of the trial court.

The judgment of the Court of Appeals is reversed and the judgment of the Circuit Court of Rutherford County is reinstated. The cause is remanded for enforcement of that judgment. The costs in this Court are adjudged against plaintiff.

BROCK, C.J., and COOPER and HARBISON, JJ., concur.