Doris **STRAWN** and Charles M. Strawn, Plaintiffs–Appellees,

v.

**SCOA INDUSTRIES, INC., d/b/a Hills Department Store,** Defendant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

Oct. 3, 1990.

Application for Permission to Appeal Denied by Supreme Court Dec. 31, 1990.

Thomas E. LeQuire, Barbara L. Broersma, Chattanooga, for defendant-appellant.

Michael D. Ronan, Chattanooga, for plaintiffs-appellees.

## OPINION

GODDARD, Judge.

Doris Strawn and her husband, Charles M. Strawn, sue SCOA Industries, Inc., d/b/a Hills Department Store, for Mrs. Strawn's personal injuries and Mr. Strawn's loss of consortium as a result of Mrs. Strawn falling in Hills' store.

The jury found in favor of the Plaintiffs, awarded Mrs. Strawn $47,000 and Mr. Strawn $18,000, remitted by the Trial Court to $3000.

In its answer, SCOA denied that it had owned any interest in Hills Department Store and we can find no other reference to this point in the pleadings or the proof. Judgment, however, was rendered against SCOA Industries, Inc., d/b/a Hills Department Store and as no issue is raised as to this point we will notice it no further.

Hills' appeal raises the following issues:

I. THE VERDICT IS NOT SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE.

A. ON THE CLAIM OF DORIS STRAWN, THE PREPONDERANCE OF EVIDENCE REVEALS MRS. STRAWN WAS CONTRIBUTORILY NEGLIGENT AND DEFENDANT WAS NOT NEGLIGENT.

B. ON THE CLAIM OF CHARLES STRAWN, THE RECORD CONTAINS NO PROOF OF DAMAGES.

II. THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL BASED UPON JURY MISCONDUCT.

III. THE TRIAL COURT ERRED IN FAILING TO SUGGEST A REMITTITUR ON THE VERDICT FOR DORIS STRAWN AS THE VERDICT WAS EXCESSIVE.

Because this is a jury verdict approved by the Trial Court, we will treat issue one as contending there is no material evidence to support the verdict.

There is material evidence to show the following facts: On July 11, 1986, between 10:00 and 10:30 a.m., Mrs. Strawn, a customer of Hills, was walking toward the cashier's station to purchase a bath mat which she had selected and was holding in her hands. She slipped and fell on a substance on the floor, which was described as similar to PineSol or Mr. Clean. Apparently it spilled out of a bottle which, along with the cap, lay nearby. Although there was a strong smell of the substance, Mrs. Strawn neither saw nor smelled it prior to her fall.

With regard to the knowledge of Hills or its agents regarding the spill, there is proof from Mrs. Strawn that one cashier said, "A lady dropped that a while ago," and from one of Mrs. Strawn's witnesses that the cashier said, "Somebody dropped that a few minutes ago." Both the regular cashier and the head cashier, who were at their posts of duty, smelled the substance about the same time and the head cashier was calling maintenance to correct the situation as Mrs. Strawn approached. While there is proof from the head cashier that she called out a warning to Mrs. Strawn, the regular cashier says no warning was given.

We conclude under the foregoing fact that reasonable minds could differ as to whether Hills had sufficient time to remove the substance, barricade the aisleway or warn Mrs. Strawn before the accident occurred.

As to Mrs. Strawn's contributory negligence, as a general rule, it is an issue to be decided by the jury. Our Supreme Court in *Frady v. Smith*, 519 S.W.2d 584, 586 (Tenn.1974), stated the following:

> Negligence, contributory negligence, and proximate cause are ordinarily issues to be decided by the jury, and can be withdrawn from the jury and decided by the court only in those cases where the facts are established by evidence free from conflict, and the inference from the facts is so certain that all reasonable men, in the exercise of a free and impartial judgment must agree upon it. *Spain v. Livingston*, 59 Tenn.App. 346, 440 S.W.2d 805 (1968).

We do not believe the facts in this case meet the demanding tests above enunciated, justifying a directed verdict on the grounds of contributory negligence. Additionally, we note that Mrs. Strawn was carrying the bath mat to purchase at the time she fell, which may well have obscured her vision. Whether failure to see the spill under these circumstances was contributory negligence was obviously a question for the jury.

Moreover, we note that Hills did not make a motion for a directed verdict at the close of all the proof. In *Saffles v. Harvey Motor Co.*, 780 S.W.2d 727 (Tenn.App. 1989), the Court treated an inartfully worded issue on appeal as stating "there was no evidence to support the verdict and that the trial judge should have directed a verdict." The Court thereupon held that this issue could not be considered because no motion for a directed verdict was made at the close of all the proof.

■ As to the claim that there is no proof of damages as to Mr. Strawn, he testified "Well, since the accident there has been no relationship there at all. I just don't—you know, I don't have a wife." Mrs. Strawn testified that she was unable to do household chores she formerly did.

We think the jury could infer from the foregoing that Mr. Strawn lost to a degree the companionship and domestic services of his wife, which would support an award of the modest $3000 that he ultimately received.

■ The Strawns' claim of jury misconduct is supported by affidavits of three jurors, each of whom stated that the jury "discussed the fact that the Strawns would have to pay their attorney fees out of any judgment we awarded Hills. These discussions affected the amount of the verdict and the verdict was increased by the amount we thought would be sufficient to pay the Strawns' attorneys." To the best of one juror's recollection, the jury decided to add 30 percent of the amount of the $50,000 already arrived at, increasing the total award by $15,000.

The threshold issue as to this question is whether the affidavits are competent evidence. Our Supreme Court addressed the question in *State v. Blackwell*, 664 S.W.2d 686 (Tenn.1984), and adopted the Federal Rule of Evidence, 606(b),[1] which provides as follows (at page 688):

> b. Inquiry into validity of verdict or indictment.—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

This Rule has been said to be a compromise between important public policies, enabling the Court to protect litigants from verdicts tainted by extraneous prejudicial information or outside influence, while at the same time recognizing the importance of the inviolate nature of a jury's deliberations.

Several cases have been cited by the Strawns holding under various circumstances that the influence was not extraneous. In *Caldararo v. Vanderbilt University*, 794 S.W.2d 738, (1990), the jury foreman related to the other jurors information presumably acquired from his wife, a surgical nurse. In *State v. Higdon*, an unreported case of the Court of Criminal Appeals, filed March 15, 1990, in Nashville, 1990 WL 26772, one juror commented to the others that, "A shot naturally travels upward when it enters the body." In *State v. Hailey*, 658 S.W.2d 547 (Tenn.Cr.App.

1983), one juror commented that, "the defendant has been tried and convicted of murder once before and he shouldn't have a second chance."

We conclude, based on the foregoing authority, that the statements of the jurors are not extraneous and, therefore, not competent evidence.

Moreover, although not specifically finding the amount added for attorney fees was $15,000, the Trial Court in ruling on the motion for new trial observed that there was some proof that this was the amount added and pointed out that he had reduced Mr. Strawn's verdict by that amount.

■ Apropos of the last issue, Mrs. Strawn was 53 years of age at the time of her fall. She was property manager of an apartment complex, containing 178 units. She was paid on a commission basis and her income declined some $3000 per year after her injury. Because Mrs. Strawn was unable to do that which needed to be done and which she had done formerly, she was terminated as of August 3, 1989.

Immediately after the fall Mrs. Strawn went to the hospital and by coincidence her regular physician was in the hospital and examined her. Later she went by his office and he ordered that she have x-rays taken which eventually proved to be negative. The pain persisted in her back and she went to an orthopedic surgeon who first saw her on May 23, 1988. He saw her again on September 7, October 5, January 12, 1989, and August 10. The doctor on these occasions observed muscle spasms which is an objective sign.

Because of a pre-existing back condition which required surgery a number of years before, the orthopedic surgeon was of the opinion that the fall aggravated the pre-existing condition and that as a result of the fall she suffered a permanent partial disability of 10 percent to the body as a whole. She incurred medical bills of $3905, which included a number of ultrasound treat-

---

1. The admissibility of jurors' statements concerning a verdict's validity is now governed by Tennessee Rules of Evidence, 606(b), which is substantially similar to the Federal Rule and became effective January 1, 1990, after the present suit was concluded at the trial level.

ments, as well as cortisone injections, which were administered to relieve the pain she experienced during an extended period after her fall.

Her activities have been curtailed and she is unable to do many of the things she enjoyed prior to her injury.

We conclude the foregoing evidence is sufficient to support a $47,000 judgment when applying the material evidence rule as required under *Poole v. Kroger Co.*, 604 S.W.2d 52 (Tenn.1980).

For the foregoing reasons the Trial Court is affirmed and the cause is remanded for collection of the judgment and costs below. Costs of appeal are adjudged· against Hills and its surety.

FRANKS, J., and WILLIAM P. NEWKIRK, Special Judge, concur.