# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## BRUCE L. KINNARD v. LARRY W. TAYLOR, ET AL.

**A Direct Appeal from the Circuit Court for Wilson County**
**No. 8023      The Honorable Clara Byrd, Judge**

---

### No. M1999-00512-COA-R3-CV - Decided May 25, 2000

---

This is a personal injury case, and the jury returned a verdict for plaintiff.  Plaintiff appeals asserting that the trial court erred in failing to grant a new trial because of the alleged inadequacy of the verdict.

**Tenn.R.App.P. 3, Appeal as of Right; Judgment of the Circuit Court is Affirmed**

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which HIGHERS, J., and FARMER, J., joined.

Dicken E. Kidwell, Murfreesboro, For Appellant

William G. McCaskill, Jr., Nashville, For Appellees

### OPINION

Plaintiff/appellant, Bruce L. Kinnard, appeals the judgment on the jury verdict that awarded him $5,200.00 in damages.

The facts related to the accident are not in dispute.  On March 10, 1990, Kinnard and defendant, Larry Taylor, were driving north on Highway 71 in Mt. Juliet, Tennessee.  Kinnard stopped in the left turn lane while waiting for traffic to proceed. Taylor struck the rear of Kinnard's automobile causing it to collide with the vehicle in front of Kinnard. Kinnard's automobile sustained damage to the bumper, bumper brackets, gas tank, and minimal damage to the front of the vehicle.

At the scene of the accident, Kinnard denied injury.  Following the accident, Kinnard ran errands and then proceeded home.  Later that evening, Kinnard began experiencing pain and went to the emergency room at Southern Hills Hospital.  After x-rays were taken, Kinnard was treated with a cervical collar and anti-inflammatory drugs.

On March 8, 1991, Kinnard filed a complaint seeking damages for injuries sustained in the

accident. After a trial on the merits, the jury returned a verdict finding for Kinnard and awarded him damages totaling $5,200.00 for past medical expenses. Kinnard filed a motion for a new trial on May 12, 1999 or alternatively for additur. In denying the motion, the trial court found no grounds to set aside the jury's verdict and order a new trial. The court found the jury's verdict within the range of reasonableness and refused to grant an additur.

Plaintiff appeals and present six issues for review. However, we perceive the sole issue to be whether the trial court erred in failing to grant a new trial due to the alleged inadequacy of the jury verdict.[1]

Kinnard contends that the jury's award is insufficient, because the verdict "barely covers initial medical expenses, provides nothing for lost wages and/or pain and suffering, and is consequently below the lower level of reasonableness."

In *Miller v. Williams*, 970 S.W.2d 497 (Tenn. Ct. App. 1998), this Court, in an opinion authored by Judge Susano, succinctly stated the principles we must observe in deciding the issue before the Court in this case. The Court stated:

> In this case, we must decide if the record contains "material evidence to support the [jury's] verdict." Rule 13(d), T.R.A.P.; *Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 331 n.2 (Tenn. 1996); *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980); *Pettus v. Hurst*, 882 S.W.2d 783, 788 (Tenn. Ct. App. 1993); *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 640 (Tenn. Ct. App. 1993). Because Miller asserts that the jury's award is insufficient, our focus is on the "lower limit" of the "range of reasonableness." *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 146 (Tenn. 1981). In the *Foster* case, the Supreme Court stated that
>
> > [a] reasoned examination of the credible proof of damages leads to a determination of the figure beyond which excessiveness or inadequacy lies and beyond which there is no evidence, upon any reasonable view of the case, to support the verdict.
>
> *Id.* In reviewing the adequacy of the jury's award, we note that
>
> > [the determination of] the amount of compensation in a personal injury case is primarily for the jury, and

---

[1] The Court of Appeals does not have the authority to grant an additur under T.C.A. § 20-10-101 (1994). *See Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980); *Wilkerson v. Altizer,* 845 S.W.2d 744, 749 (Tenn. Ct. App. 1992).

> that next to the jury, the most competent person to pass on the matter is the trial judge who presided at the trial and heard the evidence.

*Id.* at 143-44; *Coffey*, 929 S.W.2d at 331 n.2.

The effect of a trial court's approval of the amount of a jury award is clear:

> ... the trial judge's approval of the amount of the jury's verdict invokes the material evidence rule, just as it does with respect to all other factual issues upon which appellate review is sought....
>
> * * *
>
> "[a]ll of the evidence in the record that tends to support the amount of the verdict should be given full faith and credit upon appellate review."

*Poole*, 604 S.W.2d at 54 (citing *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn. 1980)). Thus, our analysis is limited to a determination of whether the record reflects material evidence demonstrating that the jury's award is "at or above the lower limit of the range of reasonableness, giving full faith and credit to all of the evidence that tends to support that amount." *Poole,* 604 S.W.2d at 54. We are required to take the strongest legitimate view of all the evidence, including all reasonable inferences therefrom, to sustain the verdict; to assume the truth of all the evidence that supports it; and to discard all evidence to the contrary. *Id*. In this analysis, we do not weigh the evidence, nor do we determine the credibility of the witnesses. *Id.*

*Id.* at 498-499.

Kinnard testified that he was 47 years old at the time of trial. He attended Belmont College for one year, but left to attend State Area Vocational School where he trained to become a tool and die maker. Kinnard worked in this profession from 1973 until 1981.

Kinnard was involved in an automobile accident in 1973, which resulted in intermittent back pain for a couple of years. He filed a lawsuit, but it was never settled. In 1978, a vehicle sideswiped Kinnard's vehicle. As a result, Kinnard suffered knee problems. Kinnard sued the driver of the vehicle and the law suit settled for approximately $2,000. In 1981, Kinnard was a passenger in a vehicle which was involved in an accident. His primary complaint was with his vision. Kinnard

sued the driver, the Metropolitan Government and a construction company working at the scene of the accident. He settled with the driver for approximately $3,500.00 and the construction company for approximately $5,000.00. Kinnard testified that because of the injuries sustained in the 1981 accident he missed six weeks of work and eventually quit his job in the tool and die business.

From 1982 to 1990, Kinnard operated a record business. His highest income earned during this time was in 1986, when he netted $4,000.00. He testified that he is no longer able to operate the record business because of the injuries sustained in the 1990 automobile accident.

Regarding the 1990 accident, Kinnard testified that he began experiencing pain the night of the accident and visited the emergency room. A few days later, Kinnard contacted his cousin, a lawyer, for a recommendation of an orthopedic doctor. On his cousin's recommendation, Kinnard visited Dr. Dewey Thomas.

Kinnard did not seek medical treatment from the end of 1991 until August 1994. During this time, Kinnard took herbs and hot showers, and exercised to treat the pain. In 1994, Kinnard visited Dr. Melvin Law, who treated Kinnard with pain medications until 1996 when Law performed surgery. Kinnard testified that he needed the surgery to prevent the pain from getting worse, but stated that he is still in pain.

The plaintiff also introduced the testimony of several doctors via video taped depositions. Dr. Dewey Thomas, an orthopedic surgeon in Nashville, testified that Kinnard first visited his office on March 19, 1990 and related that he had been in an automobile accident two days before. Kinnard stated that following the accident he had been taken to Southern Hills Hospital Emergency Room. X-rays were made of his neck, his primary complaint. A physical examination revealed that he had moderate muscle spasms in the neck area with some restriction of motion. There was no evidence of any gross nerve deficit in either upper extremity. Although there was some loss of motion in the lower back, there was no evidence of any nerve involvement in either of the upper or lower extremities. He was advised to take anti-inflammatory medications and muscle relaxants. Because of the continuing complaints of pain, an MRI was ordered of the lumbar spine in July of 1990, and there was a left paracentral L5-S1 disc herniation revealed. In February, 1991, an MRI was performed of the upper extremity and revealed a right-sided disc herniation between the fourth and fifth cervical vertebrae. Dr. Thomas opined that these disc herniations could be related to the March, 1990 accident, because he did not have any symptoms of such problems prior to that accident. Because of his continuous, multiple complaints, Dr. Thomas referred Kinnard to neurosurgeons, Dr. Edward Howell and Dr. Manual Weiss, and he was later referred to Vanderbilt Pain Clinic, where he was treated by Dr. Winston Parris. Dr. Parris testified that he saw Kinnard on June 13, 1991, and he was complaining of chronic pain in the cervical area, right shoulder area, and low back. The low back pain radiated to the right and left lower extremity. Kinnard's physical examination was essentially normal with exception of some tender spots in the neck and low back. Parris treated Kinnard's pain with nerve block injections in June and November, 1991. He testified that Kinnard refused to accept his recommendation that he have epidural steroid injections to treat the pain. His last visit to the pain clinic was on December 9, 1991.

Dr. Melvin Law, an orthopaedist, testified that he first saw Kinnard in October of 1994, almost four and one-half years after the accident. He testified that his examination revealed that Kinnard had a herniated disc with nerve compression, spinal cord compression at the C4-5 level of his neck and that he treated Kinnard with pain medications for two years, during which time Kinnard had multiple complaints. In 1996, Law performed surgery of the cervical area, removing discs and bone spurs and fusing the spine. Dr. Law opined that Kinnard's neck problems were related to the March 1990 accident. He further opined that Kinnard would have fifteen percent total disability impairment in his neck. The medical expenses incurred for the second course of treatment from 1994 to 1996 were approximately $55,000.00.

Defendant introduced the testimony of Dr. Robert Weiss, a neurosurgeon, to whom Dr. Thomas referred Kinnard. Dr. Weiss testified that he first treated Kinnard in February of 1991 for Kinnard's complaint of "total body pain." During this visit, Dr. Weiss performed a physical examination and found no evidence of a neurologic injury. He also reviewed Kinnard's previous imaging studies, including a cervical, thoracic, and lumbar MRI. Dr. Weiss found a small disc bulge at the bottom level at L5-S1, which he thought common for someone Kinnard's age. He also noted some narrowing of the neck at the C5-6 level, which he characterized as arthritis. He did not relate these findings to the March 1990 accident. Other than these findings, Weiss testified that the imaging studies were normal with no objective abnormalities present. Weiss stated that he did not see anything on the imaging studies which he could ascribe to the 1990 automobile accident. He further stated that he would not have placed any physical restrictions on Kinnard in 1991.

Weiss testified that he reviewed Kinnard's medical records from 1991 through 1997. Weiss continues to feel that based on Kinnard's complaints and symptoms, he would not have performed the surgery in 1996.

The record indicates that Mr. Kinnard presented a rather detailed chronology of his pain and discomfort which was so elaborate as to evoke comment from Dr. Weiss. His multiple and persistent statements of pain, coupled with the minimal physical findings, could have led the jury to believe that he was grossly exaggerating his condition. The jury was also aware that he had previous experience with presenting claims for personal injuries and had actually collected money from these claims.

Insofar as there was a conflict in the opinions of the physicians, the jury undoubtedly decided that Dr. Weiss's opinion was more consistent with what they found from their observation of the plaintiff. The jury had the opportunity to observe the witnesses as they testified, both in person or by videotape. The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959); and *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844 (Tenn. Ct. App. 1982).

The jury apparently wanted to award Mr. Kinnard the expense he incurred in his initial treatment but, because of the factual dispute, did not feel that there was any expense of the subsequent treatment related to the accident. Bearing in mind the extreme importance of credibility

as assessed by the jury, the jury could have reasonably concluded that Mr. Kinnard was not injured in the manner and to the extent as he claimed, that perhaps there was some exaggeration on Mr. Kinnard's part concerning his multiple complaints of pain.

From our review of the record, there appears to be material evidence to sustain the jury's verdict. Accordingly, the judgment of the trial court is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Bruce L. Kinnard.