IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 20, 2021 Session

## TENNESSEE FARMERS MUTUAL INSURANCE CO. v. JOHN A. SIMMONS ET AL.

**Appeal from the Circuit Court for Loudon County**
**No. 2018-CV-49     Michael S. Pemberton, Judge**

———————————————————————

### No. E2020-00791-COA-R3-CV

———————————————————————

In the underlying declaratory judgment action, an insurance company sought a judgment that an automobile insurance policy issued to a mechanic does not provide coverage for an accident involving the mechanic. After examining the mechanic under oath, the insurance company moved for summary judgment, arguing that the policy contained a business purpose exclusion for accidents occurring while road testing a vehicle, which the mechanic stated he was doing at the time the accident occurred. The mechanic responded with an affidavit asserting that he was driving the vehicle for personal errands. The trial court denied the motion, finding that there was a genuine issue of material fact as to the mechanic's purpose for driving the vehicle. At trial, the mechanic testified that he was running personal errands at the time of the accident but offered no explanation for his contradictory sworn statements. Following the close of proof, the insurance company renewed its argument regarding the policy's exclusion and moved for a directed verdict. The trial court denied the motion and submitted the matter to a jury, which found that the exclusion did not preclude coverage of the accident. On appeal, the insurance company contends that the trial court erred by not applying the cancellation rule. We agree and hold that if the rule had been applied, no genuine issue existed for the jury to consider with respect to the mechanic's business purpose at the time the accident occurred. Thus, the trial court should have directed a verdict in favor of the insurance company. The judgment of the trial court approving the jury verdict is vacated and the case is remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, JJ., joined.

Janet Strevel Hayes and Chris W. McCarty, Knoxville, Tennessee, for the appellant, Tennessee Farmers Mutual Insurance Company.

John A. Simmons, Jeremy Shipley, and Stephanie Shipley, Pro Se; W. Holt Smith, Madisonville, Tennessee, for appellees Celeste Y. Miller and Robert Miller.

**OPINION**

### I.       Factual and Procedural Background

John Arthur Simmons ("Simmons") worked as a diesel mechanic specializing in repairing vehicles and farming equipment that run on diesel engines. In late May 2017, Jeremy Shipley ("Shipley") brought his 2005 Ford F-250 diesel pick-up truck to Simmons for repairs after the truck's oil pressure warning light came on. Three days later, on June 2, 2017, Simmons was involved in an automobile accident while driving Shipley's truck ("the Accident"). In December 2017, Celeste Miller and her husband, Robert Miller, sued Simmons, Shipley, and Shipley's wife, Stephanie Shipley, seeking compensation for personal injuries and property damage, alleging that Simmons negligently rear-ended the vehicle driven by Mrs. Miller while operating the truck for the purpose of "mechanical evaluation" with permission from the Shipleys.

Tennessee Farmers Mutual Insurance Company ("Farmers") had issued an automobile insurance policy to Simmons that was in effect on the date of the Accident. The policy states, in relevant part: "**We** will pay compensatory damages . . . for *bodily injury* and *property damage* for which any *covered person* becomes legally liable to pay because of an automobile accident arising out of the maintenance or use of an **auto** or **trailer**." The policy also contains a "business purpose" exclusion, which states: "**We** do not provide liability coverage . . . for any person or entity while employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking vehicles designed for use mainly on public highways, including road testing and delivery."

On March 16, 2018, after receiving notice of the lawsuit filed by the Millers, Farmers conducted an examination under oath ("EUO") of Simmons as part of its investigation of the facts alleged by the Millers concerning the Accident. During the EUO, the following exchange took place about Simmons' use of Shipley's truck at the time of the Accident:

> Q.    Okay. How many times had you driven the truck or road tested the truck before this accident on this Friday, June 2nd?
> A.    Um, probably three or four.
> Q.    Okay.
> A.    Yeah.
> Q.    And as I understand it, at the time that you were driving the vehicle on Friday, June 2nd at the request of Mr. Shipley, you were test driving it or road testing it to see if there were any other problems that might need to be addressed before he hauled his trailer the next week,

right?

A.    Yeah. He just didn't want the oil pressure dropping.

Q.    He wanted to make sure it was fixed?

A.    Yeah.

Q.    All right. And that was at the request of Mr. Shipley?

A.    Yes, sir.

Simmons' wife, Kimberly D. Simmons, was also examined under oath the same day. When asked about Simmons' purpose in operating the truck on the day of the Accident, she replied: "From what I heard, he was test driving it. He had been working on it and he was just test driving it."

On May 30, 2018, Farmers filed a Complaint for Declaratory Judgment in the Circuit Court for Loudon County (the "trial court"), seeking a declaration that the policy it had issued to Simmons did not provide coverage for the Accident pursuant to the policy's business purpose exclusion. Farmers asserted that Simmons' statements during the EUO indicated that he was operating Shipley's truck "while engaged in his business and/or occupation of repairing and/or servicing vehicles." Simmons filed an Answer to the complaint denying that he was road testing the truck at the time of the Accident. He asserted that he was "simply running personal errands" and that he had permission to use Shipley's truck until "Shipley got back in town and could arrange to pick up his vehicle."

On September 20, 2018, Farmers moved for summary judgment, asserting that the undisputed facts in the record established that Simmons' operation of Shipley's truck fell within the scope of the "automobile business exclusion" in the applicable insurance policy and that Farmers has no duty to provide coverage to Simmons for the Accident. Specifically, Farmers relied on Simmons' sworn statements during his EUO that he was road testing Shipley's truck at the time of the Accident. In addition, Farmers argued that under Tennessee law, Simmons' use of the truck would be excluded from coverage pursuant to the automobile business exclusion—regardless of the purpose of operation at the time of the Accident—because Simmons came into possession of the truck for repairs.

On January 8, 2019, Simmons responded to the motion, asserting that there was a genuine issue of material fact as to whether he was operating Shipley's truck on a personal errand at the time of the Accident, such that the automobile business exclusion was inapplicable. In support, Simmons filed his own affidavit, stating that he was driving the Shipley vehicle "to attend soccer practice because [he] was granted authority by Mr. Shipley by cell phone call at the latest May 30, 2017." Farmers then filed a reply in support of its motion for summary judgment, contending that the trial court should disregard the statements made by Simmons in contradiction of his previous sworn testimony during the EUO under the "sham affidavit" doctrine. Farmers asserted that under the doctrine, a party cannot create an issue of material fact by relying on later statements that contradict prior sworn testimony without providing an explanation for the discrepancy. Farmers argued

that, absent the subsequent statements, it was entitled to judgment as a matter of law because no genuine issue of material fact existed as to Simmons' purpose in using the truck at the time of the Accident.

On March 6, 2019, the trial court entered an order denying Farmers' motion for summary judgment based upon findings set forth in the partial transcript of proceedings attached to the order. The trial court stated at the conclusion of the hearing: "Well, essentially, the Court believes there are genuine issues of material fact as to the interpretation of the EUO and then the sham argument segues off that, but it also just simply has to do with assessing the credibility of the witness at trial."

The case was tried by a jury on March 9, 2020. At the outset, before any proof was introduced and outside the jury's presence, counsel for Farmers raised an objection about allowing Simmons to attempt to place blame on his insurance agent for "providing bad advice or not basically giving the right advice to Mr. Simmons as to his coverage," arguing that such defense had not been pled and, therefore, Farmers would be without opportunity to address it. The trial court agreed. Farmers then called Shipley and Simmons to the witness stand; Simmons did not call any witnesses.

Shipley testified that he knew Simmons because his wife went to high school with Simmons and his daughter played soccer with Simmons' daughter. He had taken his diesel truck to Simmons' Diesel at least twice before the Accident because he "trusted him more than [he] would a dealership." Shipley said that he texted Simmons on the Sunday before the Accident because "[t]he oil pressure had dropped on [the truck]." He explained that he dropped off the truck at Simmons' place the following Tuesday using his father's flatbed truck because he did not think the truck was drivable, and he was concerned something "pretty serious" had happened to it. Shipley then spoke with Simmons by phone that evening to discuss the repairs. When asked about Simmons driving the truck for personal purposes, Shipley answered as follows:

> Q.   But are you saying you don't have any memory –
> A.   Yeah.
> Q.   – of talking to him about running personal errands with that truck?
> A.   No, we didn't talk about even driving it at that point. . . . why would I worry about him driving it at that point with the oil pressure down? And I put it on a trailer down there.
> Q.   But you all never talked one time, did you, about him using it for personal errands?
> A.   No. The next phone call I had was Friday morning with him when it was – the truck was wrecked.

Shipley acknowledged that he would not have had a problem with Simmons driving the truck as part of repairing the vehicle.

Simmons testified that Simmons' Diesel has been a licensed business in Loudon County for over ten years. He testified that Shipley was a repeat customer and that he had Shipley's truck on the date of the Accident only because Shipley had "brought it to be repaired." Simmons disputed that Shipley did not give him permission to use the truck for personal errands. He said Shipley told him that the truck "had a full tank of fuel, if I needed to drive it or wanted to drive it, I could." Simmons explained that repairing the truck— which was limited to changing the truck's oil pressure sensor—only took him thirty seconds and that test driving the vehicle was not required. He testified that, knowing that Shipley would be out of town that week, he drove the truck to lunch on Wednesday, May 31, and then again to church that night. The next day, Thursday, June 1, Simmons drove the truck to lunch. On the day of the accident, he the drove the truck to "to pick up a seal" for his own truck and to his daughter's soccer practice. He testified that "after practice was over, I had left, and the accident happened." Concerning insurance for his business, Simmons stated that he has never had a commercial insurance policy and has not heard of a "garage" policy during his time working as a diesel mechanic. He said that he thought the policy issued by Farmers provided "full coverage" if "you drive anybody else's vehicle." Over counsel's objection, the trial court allowed Simmons to state that his Farmers insurance agent never "mentioned anything . . . about a commercial policy" and that he relied on the agent "to make decisions about . . . insurance coverage."

Simmons also testified about his prior sworn testimony during the EUO. He said that he did not mention "personal errands" because Farmers' counsel never asked. Simmons admitted that when he was asked during the EUO if he was "test driving [the truck] or road testing it on June 2nd," he answered in the affirmative. He also acknowledged that when Shipley said to drive the truck, Shipley was "wanting to see if there's anything else wrong with it." Simmons said he feels like the attorneys were trying to put words in his mouth. When asked if he had lied during the EUO, he responded, " I don't know." Farmers' counsel then read into the record an excerpt from Simmons' deposition in the lawsuit filed by the Millers:

Q. What would have been the purpose for Mr. Shipley to ask you to do that [drive his truck], other than to diagnose a problem with the truck?
A. I don't know.

At the end of its proof, Farmers moved for a directed verdict, renewing the arguments set forth in its motion for summary judgment. The trial court denied the motion, stating to Farmers' counsel: "I understand your argument as to discrepancies in the EUO's and in depositions and in trial testimony. You also understand, as always, I'll be charging a credibility issue." The case was considered by the jury, which found that the policy's automobile business exclusion did not exclude coverage for the Accident. On March 20, 2020, the trial court entered its judgment on the jury's verdict and ordered Farmers to provide Simmons with coverage for the Accident.

Farmers moved for judgment in its favor notwithstanding the jury's verdict or, in the alternative, for a new trial under Rules 50 and 59 of the Tennessee Rules of Civil Procedure. Farmers asserted three grounds in support of its motion: (1) that the trial court erred in failing to apply the cancellation rule and allowing Simmons to contradict his own prior sworn testimony; (2) that the weight of the evidence preponderated against the jury's verdict that the automobile business exclusion did not apply; and (3) that the trial court erred in allowing Simmons to introduce evidence of an insurance agent's potential fault when comparative fault had not been alleged as an affirmative defense. Simmons filed a response, arguing that the trial court had previously ruled on the cancellation rule during the summary judgment stage; that Simmons' testimony provided ample evidence to support the jury's verdict; and that Farmers opened the door for evidence about the insurance agent by questioning Simmons about a commercial insurance policy during cross examination.

On May 18, 2020, the trial court denied Farmers' motion. As to the first ground, the trial court stated that notwithstanding Simmons' EUO testimony, his trial testimony "leads this court to the conclusion that he was not test driving the vehicle at the time of the accident and that such evidence constitutes sufficient corroboration to negate application of the cancellation rule." The trial court also found that the weight of the evidence supported the verdict. With respect to evidence concerning the insurance agent, the trial court ruled that given Farmers' questioning of Simmons about "the longevity of [his] business, whether he had a commercial policy[,] and his knowledge of commercial insurance policies in front of the jury," Simmons' counsel was entitled to ask him whether the insurance agent "had ever told him about commercial policies." Farmers timely appealed to this Court.

## II. ISSUES PRESENTED[1]

Farmers raises three issues on appeal, which we restate slightly:

1. Whether the trial court erred in failing to apply the cancellation rule (a) at the summary judgment stage, thereby allowing Simmons to testify before the jury in direct contradiction to his prior sworn testimony; (b) upon Farmer's motion for directed verdict; and (c) upon Farmer's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

2. Whether the weight of the evidence preponderates against the jury's verdict inasmuch as the weight of the evidence establishes that Simmons' use of the truck at the time of the accident falls within the automobile business exclusion.

---

[1] A few weeks after Farmers filed its appellate brief, this Court entered an order allowing Simmons' counsel to withdraw and Simmons to proceed on appeal *pro se*. Simmons did not file an appellate brief or participate in oral argument.

3.     Whether the trial court erred in allowing Simmons to introduce evidence at trial of potential fault on the part of an insurance agent, given that Simmons did not plead comparative fault as an affirmative defense.

## III. STANDARD OF REVIEW

"The applicable standard of review in determining whether a trial court should grant a judgment notwithstanding the verdict is the same standard used in determining whether a directed verdict should be granted." *Johnson v. Settle*, No. M1999-01237-COA-R3-CV, 2001 WL 585093, at *1 (Tenn. Ct. App. June 1, 2001) (citing *Hicks v. Sovran Bank/Chattanooga*, 812 S.W.2d 296, 299 (Tenn. Ct. App. 1991). Our Supreme Court has explained our inquiry when reviewing the denial of a motion for a directed verdict:

> In reviewing the trial court's decision to deny a motion for a directed verdict, an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied.

*Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006) (citations omitted). Our review of a jury verdict approved by the trial judge as thirteenth juror "is limited to a review of the record to determine whether the verdict is supported by material evidence." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422–23 (Tenn. 2013) (citing *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980)). Material evidence has been defined as "'evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case.'" *Id.* (quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (1905)). "It matters not a whit where the weight or preponderance of the evidence lies under a material evidence review." *Hohenberg Bros. Co. v. Mo. Pac. R.R. Co.*, 586 S.W.2d 117, 119–20 (Tenn. Ct. App. 1979). We have previously recognized the interplay between the standard of review for directed verdict and the material evidence rule applicable to jury verdicts and remarked: "If there is material evidence to support the jury's findings, then, of necessity, granting a directed verdict for the losing party would have been improper because the evidence permitted reasonable minds to reach a conclusion different from that asserted by the losing party." In *In re Est. of Brindley*, No. M1999-02224-COA-R3-CV, 2002 WL 1827578, at *2 (Tenn. Ct. App. Aug. 7, 2002).

As to evidentiary rulings challenged on appeal, "trial courts are generally afforded a great deal of discretion regarding the admission or exclusion of evidence." *Tire Shredders, Inc. v. ERM-N. Cent., Inc.*, 15 S.W.3d 849, 858 (Tenn. Ct. App. 1999) (citations omitted). This Court will not disturb a trial court's decision on admissibility of evidence unless "there is a showing of abuse of discretion." *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 419 (Tenn. Ct. App. 2004). A trial court abuses its discretion "when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted).

## IV.   ANALYSIS

Before addressing the applicability of the cancellation rule in this case, we first note that this Court has long held that "'when the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue as to a material fact, the overruling of that motion is not reviewable on appeal when subsequently there has been a judgment rendered after a trial on the merits.'" *Alex Lyon & Son Sales Managers & Auctioneers, Inc. v. Boles*, No. M2010-00388-COA-R3-CV, 2010 WL 3895520, at *1 (Tenn. Ct. App. Oct. 5, 2010) (quoting *Arrow Elecs. v. Adecco Emp. Servs., Inc.*, 195 S.W.3d 646, 650 (Tenn. Ct. App. 2005)); *see also Hobson v. First State Bank*, 777 S.W.2d 24, 32 (Tenn. Ct. App. 1989); *Mullins v. Precision Rubber Prods.*, 671 S.W.2d 496, 498 (Tenn. Ct. App. 1984); *Tate v. County of Monroe*, 578 S.W.2d 642, 644 (Tenn. Ct. App. 1978). In the instant case, the trial court entered a judgment approving the jury's verdict and, therefore, the trial court's decision not to apply the cancellation rule at the summary judgment stage is not reviewable.

We thus turn to the trial court's decision to deny Farmers' motion for a directed verdict on the basis of Simmons' contradictory statements about the purpose of driving Shipley's truck at the time of the Accident. Farmers argues that the trial court should have entered a directed verdict because the evidence remaining after applying the cancellation rule establishes that Simmons was road testing the truck at the time of the Accident, which would trigger the insurance policy's automobile business exclusion.

"Under the cancellation rule, when a witness makes contradictory statements on the same question of fact, the statements cancel each other and, therefore, do not amount to evidence of the fact." *Lynch v. Portis*, No. W2012-00243-COA-R3-CV, 2012 WL 3646199, at *3–4 (Tenn. Ct. App. Aug. 27, 2012) (citing *Rochelle v. Grange Mut. Cas. Co.*, No. M2011-02697-COA-R3-CV, 2012 WL 3104901, at *7 (Tenn. Ct. App. July 31, 2012)); *see also Helderman v. Smolin*, 179 S.W.3d 493, 501 (Tenn. Ct. App. 2005); *Gambill v. Middle Tenn. Med. Ctr., Inc.*, 751 S.W.2d 145, 149–50 (Tenn. Ct. App. 1988); *Taylor v. Nashville Banner Publ'g Co.*, 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978). This Court has observed, however, that

[n]o sensible decision holds that a witness's testimony on a fact is automatically discounted simply because the witness contradicted himself or herself on that fact. Rather, the court assesses whether there is an explanation for the inconsistency and whether either version is corroborated by other evidence. The courts recognize that testimony may have value even though it has been both affirmed and denied if the contradiction is explained and shown to be the product of misunderstanding or inadvertence.

*Rochelle*, 2012 WL 3104901, at *7 (citation omitted). We have further explained:

The question here is not one of the credibility of a witness or of the weight of evidence; but it is whether there is any evidence at all to prove the fact. If two witnesses contradict each other there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to prove it is no stronger than his testimony to disprove it, and it would be mere caprice in a jury upon such evidence to decide it either way.

*Helderman*, 179 S.W.3d at 502 (quoting *Johnston v. Cincinnati, New Orleans & Tex. Pac. Ry. Co.*, 240 S.W. 429, 436 (Tenn. 1922)). These principles guide our review of the trial court's decision to deny Farmers' motion for a directed verdict, and to allow Simmons' contradictory statements to be considered by the jury.

Upon a careful review of the record, we find that Simmons' statements are both contradictory and mutually exclusive. Simmons asserted in his affidavit in response to Farmers' motion for summary judgment and during his testimony at trial that he was using Shipley's truck at the time of the Accident for personal errands. These assertions directly contradict his prior sworn statements during the EUO that he was "test driving [the truck] or road testing it to see if there were any other problems that might need to be addressed" because Shipley "wanted to make sure it was fixed."[2] To recap, before Farmers filed this declaratory action, Simmons had stated during the EUO that he was test driving the truck because Shipley wanted him to make certain it was fixed, and he never made any mention of running personal errands. About ten months later, when Farmers moved for summary judgment, Simmons submitted an affidavit stating that he was "100 percent sure . . . [he] had entirely repaired Mr. Shipley's diesel vehicle after replacement of the oil pressure sensor." At trial, Simmons added that the repair was completed on May 30, 2017, and that he was driving the truck at the time of the Accident to run personal errands. Given the circumstances and statements surrounding Simmons' contradictory statements, we conclude that Simmons' competing accounts of the reason for using Shipley's truck at the

---

[2] Simmons never testified that his use of Shipley's truck had a dual purpose, i.e., that he was road testing the vehicle by driving it to run personal errands.

time of the Accident cannot be reconciled. In addition, considering the specificity of the questions asked of Simmons during the EUO and the circumstances referenced above, we cannot conclude that his statement at trial that he was "never asked" constitutes an explanation for making no mention of personal errands.

We conclude that the trial court should have applied the cancellation rule to Simmons' testimony. When the rule is applied, the only remaining evidence supports but one conclusion: that Simmons was driving the truck for business purposes. Shipley repeatedly testified that he dropped the truck off for repair and that he did not give Simmons permission to use the vehicle for personal errands. At trial, Shipley testified that he felt he had to use a flatbed truck to haul his truck to Simmons' place for repairs because he thought the problem with the oil pressure was serious and that the truck was not drivable. Shipley added that when he called Simmons later that day about the repairs, they did not talk about Simmons "running personal errands with that truck." As Shipley put it, "why would I worry about him driving it at the point with the oil pressure down? And I put it on a trailer down there." The next time they spoke was when Simmons called to inform him that the truck had been wrecked. Shipley's testimony indicates that he left his truck with Simmons, a diesel mechanic, for the sole purpose of repair; that is, not for repair *and* personal errands. Moreover, Simmons conceded that when he had stated during the EUO that Shipley had told him to drive the truck, Shipley was "wanting to see if there's anything else wrong with it." After applying the cancellation rule, the evidence in the record only supports the conclusion that Simmons was test driving the truck. Consequently, the trial court should have directed a verdict declaring that the automobile insurance policy Farmers issued to Simmons provides no coverage for the Accident pursuant to the policy's business purpose exclusion.

Having concluded that the trial court should have applied the cancellation rule to direct a verdict in this case, the Appellant's two remaining issues are pretermitted.

## V.     CONCLUSION

We vacate the judgment of the Loudon County Circuit Court approving the jury's verdict and remand the case to the trial court for the entry of a verdict in favor of Tennessee Farmers Mutual Insurance Company and for any further action consistent with this opinion. Costs of this appeal are taxed to the appellee, John A. Simmons, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE