IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 15, 2008 Session

## BARBARA STRICKLAN and husband, REED STRICKLAN, v. JOHNNY C. PATTERSON

**Direct Appeal from the Circuit Court for Monroe County**
**No. V02342H      Hon. John B. Hagler, Circuit Judge**

---

**No. E2008-00203-COA-R3-CV - FILED NOVEMBER 4, 2008**

---

In this action for damages for personal injuries sustained in an automobile accident, the jury returned verdicts for the plaintiffs. Defendant has appealed and on appeal raises the issues of whether there was sufficient and competent proof to support plaintiff's claim for medical expenses; whether the Court erred in allowing plaintiff's treating physician to offer an opinion on permanent impairment, and he questioned whether the jury verdict was contrary to the "weight of evidence". On appeal, we affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Toby R. Carpenter, Knoxville, Tennessee, for appellant, Johnny C. Patterson.

John Carson, III., Madisonville, Tennessee, for appellees, Barbara Stricklan and husband, Reed Stricklan.

**OPINION**

Plaintiffs Barbara and Reed Stricklan brought this action to recover damages for injuries sustained by Ms. Stricklan in a motor vehicle accident with defendant, Johnny C. Patterson, which occurred on December 31, 2001.

At the pleading stage, Ms. Stricklan's initial Answers to Interrogatories, showed that she claimed that her neck and left shoulder were injured in the accident, and that she had a prior history of five ruptured discs in her neck. She responded to Requests to Admit propounded by Defendant in July 2006 wherein she admitted that in late December 2003 she slipped and fell and sustained an injury to her neck for which she obtained medical treatment. Dr. Joel Ragland, a neurosurgeon, was Ms. Stricklan's treating physician in connection with the injuries she sustained in the accident. In his deposition he testified regarding two such 1994 surgeries based on her medical records. He stated that in 1994 his partner, Dr. Sanders, had performed a cervical fusion from the third vertebrae to the sixth vertebrae and that she had done well following the procedure until December 2001 when the accident occurred. Dr. Ragland testified that he first saw Ms. Stricklan in his office on September 27, 2002 and she gave a history of neck pain since a December 31, 2001 motor vehicle accident. She also gave a history of the two spinal fusions in 1994 and stated that she had not had problems with her neck between 1994 and the accident in 2001. She stated that since the 2001 accident she had pain on the left side of her neck, down into her shoulder blade and out to the joint part of her shoulder. She did not have numbness in her hands but she had difficulty turning her head. Dr. Ragland's diagnosis was cervical strain as in a whiplash-type injury causing soft tissue injury and continued pain. He recommended home traction therapy as well as physical therapy. He saw her in his office again on October 10, 2002 and she told him that the traction therapy only delivered temporary relief. He ordered muscle relaxants and a myelogram. The myelogram was mildly abnormal but surgery was not indicated. On November 15, 2002 she presented with continued left side neck pain that radiated out to her shoulder area. Dr. Ragland explained that the pain in the shoulder area was related to the neck pain. He recommended epidural steroid injections. At that point his impression was as follows:

> My feeling was that she had more of a soft tissue musculoskeletal type of pain due to the whiplash injury as opposed to what I call a neuropathic type of problem. In other words, I didn't feel that she had a pinched nerve causing her pain as much as a ligament, muscle and joint type of a problem cause the pain.

The epidural treatment did not bring any significant relief and in mid-January 2003 Dr. Ragland released Ms. Stricklan from his care as he had done as much for her as he could.

Ms. Stricklan returned to Dr. Ragland's office in October 2003 with continued complaints of neck pain and also complaints of left shoulder pain. He stated that she had more pain with motion of the shoulder than he had noted before. Further, he referred her to Dr. Holloway, an orthopedist, for an evaluation of her shoulder pain. She returned to see Dr. Ragland on December 12, 2003 and still complained of neck pain. Dr. Holloway had ordered an MRI that showed a torn rotator cuff on the left side. In January 2004 Dr. Ragland saw Ms. Stricklan for the last time. She complained of neck pain and he still related it to a whiplash type injury to the cervical spine cause by the December 2001 motor vehicle accident. At that point, he did not think he could do anything more medically for her.

At trial, Ms. Stricklan in her testimony, stated she was unaware of when she tore her

rotator cuff which was diagnosed by Dr. Holloway. She stated she was only asking the jury to compensate her for the injuries to her neck and not the injuries to her left shoulder associated with a torn rotator cuff. She was shown an medical expense summary exhibit, and she testified that none of the listed expenses pertained to the cow incident[1] or to Dr. Holloway's diagnosis and treatment of the torn rotator cuff.

Dr. Ragland gave his opinion as to the cause of Ms. Stricklan's neck injury and as to whether the medical expenses associated with the neck injury were reasonable and medically necessary and related to the December 31, 2001 accident. His opinion was offered with the caveat that he was unable to express an opinion regarding Ms. Stricklan's left shoulder injury. Dr. Ragland testified as follows:

> Q. Were the injuries that you saw that Ms. Stricklan suffers from consistent with those of a person who was involved in a motor vehicle rear-end collision on December 31, 2001 . . . .
>
> A. Yes. They sure could be.
>
> Q. Would you expect these particular injuries to her neck to shorten Ms. Stricklan's life expectancy?
>
> A. I would not think so.
>
> Q. . . . [W]ould her neck now be more susceptible to injury as a result of any other type of trauma?
>
> A. . . . The pain and irritability that is there may make it more sensitive to injury as in causing more pain, but I don't think it makes her more likely to have a structural injury of her neck by the fact that she has these symptoms.
>
> Q. Is her condition likely to worsen as she gets older?
>
> A. No. I don't know that it's likely to get better either, but I can't say within a reasonable degree of medical certainty that it's more likely to worsen or get better. . . .
>
> Q. Is she likely to have more pain as she gets older . . . ?

---

[1]On October 4, 2003, the Stricklans were running cattle to the barn when Ms. Stricklan was knocked over and stepped on by a cow. She was taken to the emergency room and diagnosed with a ruptured ligament in her left knee. At trial, defendant introduced emergency room records from April 4, 2002 that showed Ms. Stricklan's complaints were "L-shoulder, L-leg pain" and that the diagnosis was "contusion L-leg."

A.  I cannot really say that she's likely to have more pain as time goes by . . . .

. . .

Q.  Are you aware of any medical treatment available to Ms. Stricklan at this time that would benefit her condition?

A.  No.

Q.  Do you have an opinion as to whether she will continue to have pain and limitations because of the injuries suffered on 12/31/01?

A.  I expect that she will, but again, predicting that is very difficult.

Q.  Do you have an opinion within a reasonable degree of medical certainty as to whether she will need further treatment in the future as a result of the injuries she suffered on December 31, 2001?

A.  She may need some medication intermittently for symptom control.  That is the most I can think of at this point that she may need.

Q.  Do you have an opinion . . . whether Ms. Stricklan will develop either arthritis or degenerative changes as a result . . . of these injuries . . . ?

A.  I cannot say that within a reasonable degree of medical certainty.

On cross-examination, Dr. Ragland stated Ms. Stricklan gave a history to him in 2002, after the accident, of doing "fairly well" and that she was "without any problems" following the 1994 surgeries.  Defense counsel pointed out that Ms. Stricklan had complained of neck pain to her primary care physician in 1999.  Dr. Ragland responded that he was unaware of a complaint of neck pain in 1999, but it would not surprise him.  Defense counsel placed in the record, Dr. Smith's note dated October 30, 2001 which states "[t]hree month follow-up; pain in both shoulders" and "[b]ones are sore in arm". Dr. Smith was not called as a witness to testify regarding his notes. Defense counsel also read into the record Parkwest Emergency Room records of April 4, 2002 regarding Ms. Stricklan's being "trampled" by a cow: "Trampled by cow, left shoulder, left leg pain".

Dr. Ragland agreed under cross-examination that he had not seen Ms. Stricklan the three years prior to trial and that he had not included an evaluation of her permanent impairment due to neck pain in his record.  He conceded that he had not considered whether she had a permanent impairment until the morning of trial. He stated that between the time he first evaluated her in 2002 and his last visit with her in January 2004 he "would have plenty of time to determine whether she had any - - was having any improvement in her condition or whether she was stable in her condition

-4-

with her complaints . . . ."

The jury awarded Ms. Stricklan $65,000.00 damages, and Mr. Stricklan $10,000.00 for loss or consortium. Defendant has appealed and raises these issues:

A. Whether plaintiff offered sufficient and competent proof to support her claim for medical expenses?

B. Whether the Trial Court erred when it allowed the testimony of Dr. Joel Ragland regarding Barbara Stricklan's permanent impairment?

C. Whether the verdict of the jury was contrary to the weight of the evidence?

The standard of review of a jury verdict is well settled that findings of fact by a jury in civil actions will be set aside only if there is no material evidence to support the verdict. Tenn. R. App. P. 13(d). The Supreme Court, in *Whaley v. Perkins,* 197 S.W.3d 665 (Tenn.2006), addressed the approach appellate courts should take when determining whether there is material evidence to support a jury verdict as follows:

[A]n appellate court shall : (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all countervailing evidence. Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies. If the record contains "any material evidence to support the verdict, the jury's findings must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury."

*Whaley,* at 671.

Whether the evidence is material does not relate to the weight of the evidence. *Kelley v. Johns,* 96 S.W.3d 189, 194 (Tenn. Ct. App.2002). "Rather, it involves the relationship between the proposition that the evidence is offered to prove and the issues in the case." *Id.* On appeal, the Court's task is "to determine whether the record contains any evidence relating to the matters at issue which, when reviewed in a light most favorable to the prevailing party, supports the jury's verdict." *Id.* at 195.

The admissibility of expert testimony is within the discretion of the trial court. *Waters v. Coker*, No. M2007-01867-COA-RM-CV, 2008 WL 4072104 at * 6 (Tenn. Ct. App. Aug. 28, 2008). Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge,* 42

S.W.3d 82, 85 (Tenn.2001). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Id.*

The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). A plaintiff is required to present competent proof regarding the reasonableness and necessity of claimed medical expenses. *Jackson v. Sunkenberg*, E1999-2271-COA-R3-CV, 2000 WL 66045 at * 2 (Tenn. Ct. App. Jan. 27, 2000). An injured plaintiff can recover for reasonable and necessary medical expenses associated with the treatment of the injury. However, in order to recover for these expenses, expert opinion must be offered regarding the reasonableness and necessity of the physician's services and charges. *See, Roberts v. Davis*, No. M2000-01974-COA-R3-CV, 2001 WL 921903 at * 4 (Tenn. Ct. App. Aug. 7, 2001).

Defendant contends plaintiffs did not offer competent evidence to support a claim for Ms. Stricklan's medical expenses, and points to the fact that Dr. Joel Ragland testified in his deposition that Ms. Stricklan had $18,403.61 of medical expenses and at trial counsel for plaintiffs' produced a "Medical Expense Summary" that showed a total of $14, 335.61 for Ms. Stricklan's medical expenses. Dr. Ragland, however, did not testify that all of the medical expenses included in the $18, 403.61 figure were associated with Ms. Stricklan's injuries caused by the motor vehicle accident. In fact he went through the bills attached to the summary of medical bills presented at his deposition and discussed in detail the expenses that were not connected to the injury caused by the accident, and stated that the bills associated with Ms. Stricklan's torn rotator cuff shoulder injury, which was treated by Dr. Holloway, were not related to the accident.[2] Dr. Holloway's bills are identified as are the bills for the unrelated radiology studies referenced by Dr. Ragland. Dr. Ragland's testimony forms the basis for and supports the summary of medical expenses of $14,335.61 presented to the jury.

Under the abuse of discretion standard, the Trial Court Judge did not err by allowing into evidence the expert testimony of Dr. Ragland and the Exhibit regarding the medical expenses of Ms. Stricklan. We find this issue to be without merit.

The abuse of discretion standard is also applicable to defendant's contention that the Trial Court should not have admitted Dr. Ragland's testimony regarding his assessment of Ms. Stricklan's permanent impairment.

Defendant contends that Dr. Ragland was of the opinion that Ms. Stricklan had a

---

[2]Plaintiff did not claim that the rotator cuff injury was associated with the accident. In fact she affirmatively stated that she did not know the source of that injury.

permanent impairment of three percent "as a result of injuries from the accident with Mr. Patterson." Further, defendant contends that Dr. Ragland did not have a sufficient basis upon which to form this opinion because the permanent impairment opinion does not appear in Dr. Ragland's records; he never examined Ms. Stricklan to determine the degree of impairment; and he had not seen Ms. Stricklan in three years at the time he made the assessment. Dr. Ragland's testimony, however, provides that based on Ms. Stricklan's history and the studies he had performed he was able to diagnose her as having a "whiplash type injury to the cervical spine resulting in a soft tissue injury of the structure of the neck", and as to the assignment of a permanent impairment of three percent, he testified as follows:

> Q.       Do you have an opinion within a reasonable degree of medical certainty as to whether Ms. Stricklan suffered any permanent physical impairment as a result of the injuries she received on December 31, 2001?

> A.       Again, that is somewhat of a difficult question to answer because she's had neck surgery in the past, rather extensive neck surgery in the past, and so, you know, I do think she has continued pain. She has an injury related to the accident, and , therefore, it would be reasonable to consider her to have some impairment related to that injury pertaining to her neck.

> Figuring that with the current edition of the AMA Guides is quite difficult because of the way they assess impairment for cervical fusions. I think that in her situation it would be most appropriate to consider to have some impairment related to the pain associated with that which I estimate at being three percent of the whole person.

We find no abuse of discretion in admitting the doctor's testimony on this issue, and it was appropriate for the fact finder to consider.

Defendant further argues that the doctor had not seen Ms. Stricklan in three years and was unaware of her present condition, Dr. Ragland addressed this issue on cross examination:

> A.       I was asked this morning to consider if there was an impairment for her cervical condition. To determine an impairment requires the condition to be stable and without some expectation that it's going to change in the near future, and the fact that she was, how many, three years?

> Q.       I believe it's been about three years since you have seen her; is that right?

A.     Well, about three years from her injury - - no two years from her injury, I guess, to the time that I last saw her, more than a year at least, then the last time I saw her in January 2004 would have been plenty of time to determine whether she had any - - was having any improvement in her condition or whether she was stable in her condition with her complaints . . . .

Dr. Ragland's testimony addressed the fact that in his opinion he had sufficient information to address the issue of permanent impairment and the trial judge allowed this evidence, observing, "I think your objection goes more to the weight of that than to precluding testimony." We find no abuse of discretion by the Trial Court in allowing Dr. Ragland's testimony to be considered by the jury.

Finally, defendant contends the jury's verdict in favor of plaintiffs was contrary to the weight of the evidence and that the Trial Court erred in performing its duty as the thirteenth juror when it denied defendant's Motion for a New Trial.

When a motion for new trial asserts that the jury's verdict was contrary to the weight of the evidence, it becomes the duty of the Trial Court to weigh the evidence and determine whether it preponderates against the verdict, and if so, to grant a new trial. *James E. Strates Shows, Inc. v. Jakobik,* 554 S.W.2d 613, 615 (Tenn.1977). The role of the trial court when reviewing the weight of the evidence has often been referred to as that of a "thirteenth juror." The trial judge, as the thirteenth juror, is not obligated to provide any reasons for his action, anymore than the jury is bound to do so. *Jakobik*, 554 S.W.2d at 615. As the Trial Court's Order denying the defendant's Motion for a New Trial provides: "[t]he Court found the weight of the evidence supported and the Court specifically approved the verdict of the jury awarded to both Mr. and Mrs. Stricklan." The record demonstrates the Trial Judge properly acted in his role as the thirteenth juror, giving rise to the presumption that he weighed the evidence and adequately performed his function as the thirteenth juror. *See, Holden v. Rannick,* 682 S.W.2d 903, 906 (Tenn. 1984).

Our review is limited to a determination of whether there is material evidence in the record to support the jury's award to the Stricklans, giving full faith and credit to all of the evidence that tends to support the amount. *Poole v. Kroger Co.,* 604 S.W.2d 52, 54 (Tenn. 1980). We are required to take the strongest legitimate view of all the evidence, including all reasonable inferences therefrom, to sustain the verdict; to assume the truth of all the evidence that supports it; and to discard all evidence to the contrary. *Id.* We do not weigh the evidence, nor determine the credibility of the witnesses. *Id.*; *Kinnard v. Taylor*, 39 S.W.3d 120, 122 (Tenn. Ct. App.2000). Under our standard of review of the jury verdict, there is ample material evidence to support the jury's award to the plaintiffs.

In sum, the Trial Court did not err in permitting the testimony of Dr. Ragland regarding the medical expenses and permanent disability of the plaintiff, and did not err when it denied the motion for new trial and there is material evidence in the record that supports the jury's

verdict.

We affirm the Judgment of the Trial Court and remand. The cost of the appeal is assessed to the defendant, Johnny C. Patterson,

_____
HERSCHEL PICKENS FRANKS, P.J.