# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 28, 2015 Session

## KHADIJEH NARAGHIAN v. DARRYLE K. WILSON

**Appeal from the Circuit Court for Shelby County**
**No. CT00119609     Robert Samual Weiss, Judge**

_____

**No. W2014-02002-COA-R3-CV – Filed November 12, 2015**
_____

In this case, Appellant sued to recover for injuries she allegedly sustained in a motor vehicle accident that occurred in Shelby County, Tennessee. Following a trial of the case, the jury returned a verdict in favor of the Appellant but also found her to be partially at fault for the accident. The trial court reduced the awarded damages by the percentage of Appellant's comparative fault as found by the jury, and a judgment on the jury's verdict was entered. Although Appellant subsequently filed a motion for new trial, asserting various errors, that motion was denied by the trial court. Appellant then appealed to this Court reiterating the same concerns that she raised in her motion for new trial. Because we conclude that the jury's damages award is not supported by material evidence, we vacate the trial court's judgment and remand for a new trial.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Walter Lee Bailey, Memphis, Tennessee, for the appellant, Khadijeh Naraghian.

William M. Jeter, Memphis, Tennessee, for the appellee, Darryle K. Wilson.

### OPINION

### Background and Procedural History

On May 3, 2008, Appellant Khadijeh Naraghian ("Ms. Naraghian") was driving north on Kirby Parkway towards its intersection with Mt. Moriah Road when she was struck from

behind by a vehicle operated by the Appellee, Darryle K. Wilson ("Mr. Wilson"). On March 10, 2009, Ms. Naraghian filed a complaint in the Circuit Court of Shelby County seeking damages against Mr. Wilson related to the accident. The complaint alleged, *inter alia*, that Mr. Wilson had failed to maintain his vehicle under reasonable control and that his negligence was a direct and proximate cause of the accident that took place. The complaint sought to recover damages for alleged physical injuries sustained by Ms. Naraghian and for alleged property damage caused to her vehicle. Mr. Wilson filed an answer to the complaint on August 17, 2009. Although the answer admitted that Mr. Wilson and Ms. Naraghian were involved in a traffic accident, the answer asserted that Ms. Naraghian's actions were the cause of the incident. In relevant part, the answer contended that the accident resulted from Ms. Naraghian's decision to drive her vehicle away from a complete stop at a red light and then suddenly stop it without any justification. As a result of her actions, the answer submitted that Ms. Naraghian's efforts at recovery were barred due to her comparative fault.

The case was tried before a jury in September 2013. Ms. Naraghian testified first about the accident. She stated that she was driving to visit one of her friends when the traffic light in front of her turned red. According to her testimony, she came to a complete stop at the red light and then was struck from behind by Mr. Wilson. After her vehicle was hit, she claimed that she "fell in the front" and then came back "really hard in the back." She testified that Mr. Wilson's horn beeped when his vehicle struck her from the rear, and she stated that she was shaking and crying immediately following the accident.

After the accident, Ms. Naraghian testified that she went to her friend's house and began feeling pain in her neck and head. Although she applied an ice pack and later took Tylenol, her pain continued into the next day. She claimed that her pain worsened, and she alleged feeling discomfort in her neck, head, and shoulder areas. She tried to go to work, but she began to feel dizzy, threw up, and had to leave work and go home. According to Ms. Naraghian, as her pain continued to worsen over the next few days, she decided to seek treatment at the hospital.

While at the hospital, Ms. Naraghian was given pain medication, and an x-ray was taken. She was informed that if her pain worsened, she needed to go to the doctor. Ms. Naraghian stated that her pain increased following her visit to the hospital. She asserted that it even started to move into her back and hands. She eventually sought treatment with a chiropractor, Dr. Glen Burford[1] ("Dr. Burford"). Dr. Burford provided treatment to Ms. Naraghian over a series of visits.

---

[1] In the transcript of the trial proceedings and in the appellate briefs prepared by both parties, Dr. Burford's name is listed as "Buford." We observe, however, that Dr. Burford's patient ledger notes and medical records for Ms. Naraghian employ the "Burford" spelling. We will use the spelling listed on the medical records that were admitted as exhibits in this cause.

During the cross-examination of Ms. Naraghian, the following exchange took place between her and defense counsel:

Q. When did you leave [your employment with] Macy's?

A. I didn't leave Macy's, they laid [me off].

Q. Why did they lay you off?

A. They laid me off -- I don't know why they laid me off but they laid off me, I was laid off.

Q. Did they lay you off because you got arrested?

A. Because what?

Q. Because you got arrested?

A. Arrested?

Q. Arrested[.]

A. No, I never got arrested.  I was working at Macy's, I was laid off because of the customers at Macy's.  I was working with people and I was dismissed, nothing happened.  I don't want you to bring it up here, please.

Immediately following this exchange, Ms. Naraghian's attorney asked to approach the bench. Outside the hearing of the jury, Ms. Naraghian's attorney voiced his objection to defense counsel's line of questioning regarding the alleged arrest. The trial judge eventually directed defense counsel to not bring up the arrest topic any further, at which time Ms. Naraghian's attorney requested a curative instruction regarding the arrest questions. The transcript reveals that opposing counsel then engaged in a brief exchange regarding the merits of the questions pertaining to the alleged arrest. After hearing counsels' arguments, the trial judge stated as follows: "All right, we'll talk about a curative in the jury instructions." The record does not reveal that any objection was made to this decision, nor does the record transmitted to us contain the trial court's charge to the jury.

When Mr. Wilson testified, he provided a different account of the May 3, 2008 accident than the one testified to by Ms. Naraghian. According to his testimony, he was

proceeding north towards the Kirby Parkway and Mt. Moriah intersection when he observed that the traffic light was red. He testified that upon seeing that the light was red, he started to slow down. He stated that when the light changed to green, Ms. Naraghian's vehicle started to drive off, only to suddenly stop. According to his testimony, his vehicle then bumped into the rear of Ms. Naraghian's car, causing his air bags to deploy. Mr. Wilson stressed that but for Ms. Naraghian's vehicle suddenly stopping, the accident would not have occurred.

Dr. Burford testified that he first saw Ms. Naraghian on May 21, 2008. He stated that Ms. Naraghian presented with complaints of "head pain, neck pain, upper back pain, mid back pain, shoulder pain, arm pain, forearm pain[,] and low back pain." He testified that Ms. Naraghian provided him with a history of the May 3 accident and, based on his observations of her during her initial visit, he concluded that she had suffered a whiplash injury. Dr. Burford stated that Ms. Naraghian had weakness in her hip flexion and concluded that she had a reversed cervical spine. According to his testimony, the curve in her neck was consistent with the history of the May 3 accident. From an x-ray, Dr. Burford also observed that she had a head tilt to the right and concluded that she had degenerative arthritis in the lower bones in the neck. Dr. Burford testified that his observations of degeneration implied that she had a preexisting condition, and he stated that the preexisting condition would have left her spine in a weakened state. According to his testimony, given the weakened condition of her spine, the actual damage done upon any impact would be increased. Based on his observations, Dr. Burford also testified that Ms. Naraghian had weakness in her neck muscles.

In response to the injuries with which Ms. Naraghian presented, Dr. Burford administered a course of treatment involving adjustments and rehab therapy. Dr. Burford stated that the rehab therapy he performed was "developed to improve the normal posture of the spine." He testified that the adjustments he performed involved moving bones back towards their normal position. After describing in detail the specific treatment he provided Ms. Naraghian, Dr. Burford testified that the treatment was provided over a period of time that lasted over four months. He testified that the treatments he provided were reasonable and necessary and stated that Ms. Naraghian's injuries were the result of the traffic accident involving Mr. Wilson. The charges for his treatment of Ms. Naraghian totaled $13,440.00, and Dr. Burford testified that this amount was both fair and reasonable in light of the charges assessed by other chiropractors in the community. Although defense counsel questioned Dr. Burford on cross-examination regarding the propriety of a few particular charges, we note that there was no serious dispute as to the reasonableness or necessity of the charges related to Dr. Burford's treatment of Ms. Naraghian. Defense counsel did not submit any witness controverting the reasonableness of the charges that were billed, nor did defense counsel submit any proof rebutting the medical opinions testified to by Dr. Burford as to the

4

reasonableness or necessity of the treatment or as to medical causation as a result of this accident.

Following the conclusion of trial, the jury found in favor of Ms. Naraghian and concluded that her total damages were in the amount of $7,831.67. Despite its finding that Mr. Wilson was responsible for the accident, the jury also found that Ms. Naraghian was 44.58% at fault. The trial court reduced the awarded damages to $4,340.31 based on the percentage of Ms. Naraghian's comparative fault as found by the jury. The trial court's judgment reflects that these damages were awarded for "bodily injury, medical expenses[,] and physical pain and suffering." The judgment on the jury's verdict was entered on October 21, 2013.

On November 20, 2013, Ms. Naraghian filed a motion for new trial. Ms. Naraghian alleged several errors related to the trial proceedings and resulting jury verdict. In addition to asserting that the jury erred in its assessment of damages and in its comparative fault finding, the motion asserted error on the part of the trial court in failing to give a curative instruction regarding the line of questioning in which defense counsel suggested that Ms. Naraghian had previously been arrested. An order denying the motion for new trial was entered on February 10, 2014. This appeal followed.[2]

**Discussion**

Although the "statement of the issues" section of Ms. Naraghian's appellate brief lists seven issues for our review on appeal, the presented issues can be distilled into three primary concerns:

(1) Ms. Naraghian asserts that the damages awarded by the jury were disproportionate to the amount of damages proven at trial.

(2) Ms. Naraghian asserts that the jury's comparative fault findings cannot be sustained by the evidence that was presented at trial.

---

[2] We note that this is technically the second appeal of the trial court's February 10, 2014 order. Ms. Naraghian previously filed an appeal in March 2014, but we dismissed that appeal in September 2014 for lack of a final judgment. In our opinion dismissing the first appeal, we observed that the trial court had failed to resolve claims that Ms. Naraghian had pursued against Mr. Wilson's wife. After we dismissed the appeal, a consent order was entered in the trial court nonsuiting the claims against Mr. Wilson's wife. Shortly thereafter, Ms. Naraghian timely instituted the present appeal. After the second appeal was filed, we consolidated the record for this appeal with the appellate record transmitted to us in the first appeal.

(3) Ms. Naraghian asserts that defense counsel's questioning regarding an alleged prior arrest resulted in prejudice for which a curative instruction should have been given.

Because we find the first of the listed concerns to be dispositive of this appeal, we will tailor our discussion accordingly.

In a personal injury case, the determination of damages is within the province of the finder of fact. *Watson v. Payne*, 359 S.W.3d 166, 168 (Tenn. Ct. App. 2011) (citation omitted). "An award of damages, which is intended to make a plaintiff whole, compensates the plaintiff for damage or injury caused by a defendant's wrongful conduct." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419 (Tenn. 2013) (citation omitted). "When reviewing an appeal from a jury trial, we will not set aside the jury's findings of fact unless there is no material evidence to support them." *Watson*, 359 S.W.3d at 168 (citations omitted). Material evidence is evidence that is "'material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case.'" *Meals*, 417 S.W.3d at 422 (quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905)). On appeal, this Court will not re-weigh the evidence, "but will take the strongest view possible of the evidence in favor of the prevailing party, discarding evidence to the contrary and allowing all reasonable inferences to uphold the jury's verdict." *Watson*, 359 S.W.3d at 168 (citation omitted). When a party argues that the jury's verdict is inadequate, as Ms. Naraghian has done on this appeal, our review is limited to a determination of whether material evidence can be found in the record that would support the jury's damages award as "being at or above the lower limit of the range of reasonableness, giving full faith and credit to all of the evidence that tends to support that amount." *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980).

Although the jury found that Ms. Naraghian sustained $7,831.67 in damages, Ms. Naraghian argues in her brief that this amount is so disproportionate to the evidence presented at trial that it shows "passion, prejudice, or unaccountable caprice sufficient to invalidate the verdict." She notes that she incurred over $13,000.00 in medical expenses from Dr. Burford and states that his medical testimony and treatment costs were largely unchallenged and unimpeached. In light of the uncontradicted proof presented at trial, she contends that the jury cannot disallow some arbitrary part of the expenses she incurred. We agree.

In this case, Mr. Wilson offered no proof contesting Dr. Burford's expert medical opinion that Ms. Naraghian's injuries were the result of the May 3 accident; moreover, he failed to present any evidence contesting that Dr. Burford's bills were reasonable and

necessary. In light of the proof presented at trial, we must conclude that there is no material evidence to support an award of damages as low as that found by the jury. The jury's finding that Ms. Naraghian sustained $7,831.67 in damages was not "at or above the lower limit of the range of reasonableness." *See id.* In the absence of any serious challenge to the charges billed by Dr. Burford or the necessity of the actual treatment he provided, the jury's verdict cannot be sustained. Although a plaintiff should not recover for medical expenses which are plainly shown to be unnecessary, "much injustice lurks in the practice of indiscriminately discounting medical expenses because the finder-of-fact 'doubts their necessity,' or 'feels they were unnecessary.'" *Loftis v. Finch*, 491 S.W.2d 370, 375 (Tenn. Ct. App. 1972).

This case is somewhat analogous to another appeal that was decided by this Court, *Taylor v. Smith*, No. E2002-01158-COA-R3-CV, 2003 WL 21487112 (Tenn. Ct. App. June 24, 2003). In *Taylor*, plaintiffs brought suit for damages they claimed to have sustained in a two-vehicle accident. *Id.* at *1. The case proceeded to trial against the plaintiffs' uninsured motorist carrier, and the jury returned a verdict in the amount of $10,000.00. *Id.* The plaintiffs appealed asserting that the jury's verdict was not supported by material evidence. *Id.* The proof showed that one of the plaintiffs received arthroscopic knee surgery related to a pre-existing degenerative condition in her knee, but the surgeon who performed the surgery testified that the condition had been aggravated by the vehicular accident at issue. *Id.* Moreover, the proof at trial showed that the charges for the knee surgery and corresponding treatment totaled $14,895.00, charges that the surgeon testified were both reasonable and necessary. *Id.* at *3. On appeal, we observed that the uninsured motorist carrier had not called any witnesses rebutting what the surgeon had testified to, and we noted that the defense had not seriously challenged the surgeon's opinion as to the bills associated with the knee surgery. *Id.* at *2-3. Because we found no material evidence to support an award less than the "hard-core" medical bills, we were compelled to vacate the trial court's judgment entered on the jury's award. *Id.* at *4.

Another case that is illustrative of this principle is this Court's decision in *Flexer v. Crawley*, 269 S.W.2d 598 (Tenn. Ct. App. 1953). In *Flexer*, the plaintiff filed suit for damages arising out of an automobile collision in which she was involved. The proof showed that plaintiff had suffered a severe neck injury and that her head was "violently popped" as a result of whiplash. *Id.* at 599. Although the jury returned a verdict in favor of the plaintiff, including $545.00 for personal injuries, she contended that the awarded damages were inadequate and moved for a new trial. *Id.* at 598. When the trial court overruled her motion for a new trial, she appealed to this Court. *Id.*

When the matter came before this Court, we observed that the plaintiff's actual medical expenses had totaled over $900.00. *Id.* at 600. Moreover, we observed that there was no proof in the record from the defendant "contradicting plaintiff or the testimony of her

three doctors concerning her medical expenses or injuries sustained." *Id.* We stated that, under the uncontradicted evidence, it clearly appeared that the plaintiff's injuries were sustained as a direct and proximate result of the automobile collision. *Id.* Although we recognized that the matter of damages was primarily for the jury, we opined that "where the verdict of the jury is so grossly inadequate in comparison with the injuries actually sustained and proven as to evince passion, prejudice or unaccountable caprice on the part of the jury . . . the appellate courts will look into the facts and set the verdict aside." *Id.*

As we have already stressed, there was no evidence in this case rebutting the necessity or reasonableness of the charges billed by Dr. Burford. His testimony was essentially unimpeached. Because we cannot reconcile the jury's verdict with the undisputed evidence that was presented, we must vacate the trial court's judgment and remand this matter for a new trial. *See id.* at 601.

Although the appellate courts have the discretion to limit the scope of remand to ascertain damages alone, *see Perkins v. Brown*, 177 S.W. 1158, 1160 (Tenn. 1915), we are of the opinion that this case should be remanded for a new trial upon all issues. As the Tennessee Supreme Court stated in *W.T. Grant Co. v. Tanner*, 95 S.W.2d 926, 928 (Tenn. 1936):

> It is quite generally held . . . that if from the inadequacy of damages awarded, in view of the evidence, or the conflict of evidence upon the question of liability, or from other circumstances, plain inference may be drawn that the verdict is the result of a compromise, a new trial should be ordered upon all issues.

In this case, it is clear from the jury's apportionment of liability that the liability question was a close one (44.58% fault for Ms. Naraghian and 55.42% fault for Mr. Wilson) and, as we have already noted, the awarded damages were severely inadequate in light of the uncontradicted proof presented at trial. Because the circumstances of the verdict lead us to the "strong suspicion" that the ultimate damages awarded were the result of some type of compromise, *see Acuff v. Vinsant*, 443 S.W.2d 669, 675 (Tenn. Ct. App. 1969) (citing *Mut. Benefit Health & Accident Ass'n v. Thomas*, 123 F.2d 353 (8th Cir. 1941)), we find it appropriate to remand this matter for a new trial upon all issues in the case. Given our disposition herein, all other issues raised by Ms. Naraghian are pretermitted.

## Conclusion

Because the jury's damages verdict is not at or above the lower limit of the range of reasonableness, we hereby vacate the trial court's judgment on the jury's verdict and remand

this matter for a new trial.  Costs of this appeal are assessed against the Appellee, Darryle K. Wilson, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE