IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 1, 2025

## JACQUELINE ADAMS v. FINIS FIELDS

**Appeal from the Circuit Court for Shelby County**
**No. CT-000873-18  Judge Valerie Smith**

———————————————————

**No. W2025-00311-COA-R3-CV**

———————————————————

A jury in a personal injury case awarded damages that were significantly lower than the plaintiff's claimed medical expenses.  The trial court denied Plaintiff's motion for a new trial, and the plaintiff appealed, arguing that the jury's verdict was below the range of reasonableness and indicative of an improper compromise.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Toof Brown, New Orleans, Louisiana, for the appellant, Jacqueline Adams.

Edd Peyton, Memphis, Tennessee, for the appellee, Finis Fields.

OPINION

I.

This appeal relates to a personal injury suit stemming from a March 2017 vehicle collision that occurred in Memphis, Tennessee.  Jacqueline Adams was driving on an on-ramp entering Interstate 240.  Finis Fields was driving immediately behind Ms. Adams. As the parties were attempting to merge, Mr. Fields's vehicle struck the rear of Ms. Adams's vehicle.

The parties offered differing descriptions of the moments before the collision.  Ms. Adams claimed she was stopped on a single-lane ramp, waiting for traffic to clear, when

she was struck from behind by Mr. Fields. Mr. Fields testified that Ms. Adams "stopped unexpectedly" for "no reason" on a two-lane ramp even though there were no vehicles blocking her path, leaving him no time to avoid the collision. Mr. Fields presented a Google Maps photo that appeared to confirm that it was a two-lane ramp. Mr. Fields testified that he observed Ms. Adams's vehicle "slow down to repick . . . up speed" as if to merge. Mr. Fields then looked to his left to check for oncoming traffic to prepare for his own merge. The responding police officer, Officer Tyrone Edwards, testified that Mr. Fields told him at the scene that Mr. Fields "thought [Ms. Adams's vehicle] had already merged . . . onto I-240 when he began to merge and struck the rear of the [vehicle]."

Following the accident, Ms. Adams was transported by ambulance to Baptist Memorial Hospital East, complaining of back, neck, and arm pain. She subsequently received treatment from the Bowden Injury and Rehab Clinic and later from The Chiro Place through June 2017. The treating chiropractor at The Chiro Place ordered an MRI in May 2017, and, upon reviewing the results, referred Ms. Adams to the Semmes-Murphy Clinic. In August 2017, at Semmes-Murphy, Ms. Adams came under the care of Dr. Hoit, a neurological surgeon. Ms. Adams's treatment progressed from physical therapy to a series of nerve block injections for pain. When the injections provided diminishing relief, Semmes-Murphy performed a second MRI on Ms. Adams in September 2018, which showed minimal changes from the first MRI. In October 2018, over 18 months after the collision, Dr. Hoit performed back surgery on Ms. Adams.

At the August 2024 trial, the jury was presented with testimony from two medical experts, Dr. Errol Thomas, a retained expert for Ms. Adams, and Dr. Daniel Hoit, Ms. Adams's treating physician at the Semmes-Murphy Clinic. Dr. Thomas testified that the initial medical treatments were reasonable and made necessary by the accident. These bills, including invoices from the ambulance, Baptist Hospital, Southern Emergency Physicians, and The Chiro Place, totaled $8,263.00. Dr. Hoit testified that based on the information Ms. Adams provided him, the treatment she received at the Semmes-Murphy Clinic, including physical therapy, injections, and subsequent back surgery, was reasonable, necessary, and causally related to the March 2017 collision. The charges from Semmes-Murphy totaled $40,039.59. Thus, the total medical expenses claimed by Ms. Adams as related to the accident amounted to $48,302.59.

In addressing Ms. Adams's injuries, Mr. Fields relied upon cross-examination of Ms. Adams and her expert witnesses. During this questioning, the defense unearthed additional details about Ms. Adams's medical history. Notably, Ms. Adams admitted to a significant back injury in 2004, which had required nerve blocks and kept her out of work for nearly seven months and for which she received worker's compensation. She conceded that this prior injury caused her pain off and on into the future. Ms. Adams acknowledged that she had failed to disclose this prior injury to either Dr. Hoit or Dr. Thomas.

The medical experts indicated that there were limitations in their ability to definitively link Ms. Adams's ongoing pain to the accident, due to assumptions, preexisting conditions, and gaps in medical history. Dr. Hoit testified that his causation opinion assumed that Ms. Adams did not have any pain before the accident, though he admitted on cross-examination that as a physician, he does not "care about the causality" and just marks down what the patient reports. Dr. Thomas testified that without a patient's prior medical records, a physician could only "speculate" as to the patient's pre-accident condition and "might [attribute] causation to the wrong incident." Both doctors agreed that Ms. Adams has a pre-existing degenerative disease relating to her back known as foraminal stenosis, that is, pinched nerves in the back. Dr. Thomas noted that, absent this condition, a typical recovery should have lasted only six to twelve weeks.

Based on the testimony regarding the collision, the jury returned a verdict finding both parties at fault. It attributed 52% of the fault to Mr. Fields and 48% of the fault to Ms. Adams. The jury awarded Ms. Adams a total of $14,745.00 in damages, itemized as follows:

1) Past Medical Expenses: $8,063.00[1],
2) Past Physical Pain and Suffering: $5,000.00,
3) Past Loss of Earning Capacity: $1,682.00, and
4) Future Damages: $0.

Because the jury found Ms. Adams 48% at fault, the trial court applied the 52% fault attributed to Mr. Fields to the total damage award, resulting in a final judgment for Ms. Adams in the amount of $7,667.40.

Ms. Adams filed a Motion for a New Trial on two grounds. She argued first that the jury's damage award was below the range of reasonableness given the uncontroverted medical proof that her medical expenses totaled over $48,000. Second, Ms. Adams argued that the jury's apportionment of fault, combined with the low damage award, demonstrated that the verdict was an improper "compromise."

The trial court denied the Motion for a New Trial. In doing so, the trial court found that "the cross-examination by defense counsel in this case and exploration of Plaintiff's prior injuries rises to the level of a serious challenge" to Ms. Adams's claimed damages. The court noted that the jury's medical expense award of $8,063.00 was "so close" to the $8,263.00 in bills for the initial treatment that it reflected "deliberate action" and careful consideration by the jury, not a compromise. Indeed, this amount corresponds with Dr. Thomas's testimony that, absent Ms. Adams's pre-existing condition, a typical recovery

---

[1] The trial court noted in its order denying a motion for a new trial that Ms. Adams did not file for additur.

for her injuries should have lasted only six to twelve weeks. Regarding the apportionment of fault, the court found:

> The 52% to 48% does not on its own support the "strong suspicion of compromise" that Plaintiff argues. The Plaintiff and Defendant testified as to their recollection of the accident. Plaintiff and Defendant disagreed as to key facts including the lanes of the road at the time of the accident. The Plaintiff's credibility was challenged as well. The Court finds that there is material evidence to support the apportionment of fault determined by the jury.

Ms. Adams appeals. Although Ms. Adams's briefing is not entirely clear, she appears to challenge both the jury's award of less than the full claimed value and the validity of the apportionment of fault.[2] First, Ms. Adams contends that the jury's award of $8,026.00[3] was unsupported by the evidence because it fell below the range of reasonableness based on uncontroverted proof of her medical charges. Second, she argues that the jury's apportionment of fault, especially when taken together with the arbitrary discounting of medical proof, creates a presumption that the verdict was one of compromise.

## II.

Ms. Adams challenges the jury's damages award, arguing that there was no evidence which would permit the jury to reduce the amount awarded for her claimed medical expenses. She argues the jury's award for past medical expenses, $8,063.00, is arbitrary and "below the range of reasonableness." Ms. Adams asserts she presented expert testimony from Dr. Thomas opining upon the reasonableness and necessity of the initial period of treatment from March through June 2017, which totaled $8,263.00, and from Dr. Hoit opining upon the subsequent treatment, including surgery, which totaled $40,039.59, for a total of $48,302.59 in medical charges.

Once a trial court approves a jury verdict, "[o]n appeal, this Court will not re-weigh the evidence, 'but will take the strongest view possible of the evidence in favor of the prevailing party, discarding evidence to the contrary and allowing all reasonable inferences to uphold the jury's verdict.'" *Naraghian v. Wilson*, 515 S.W.3d 323, 328 (Tenn. Ct. App. 2015) (quoting *Watson v. Payne*, 359 S.W.3d 166, 168 (Tenn. Ct. App. 2011)). "When a party argues that the jury's verdict is inadequate, . . . our review is limited to a

---

[2] In her briefing, Ms. Adams references the trial court's thirteenth juror role but does not actually develop an argument that the trial court failed to perform this role, nor would the record support such a contention.

[3] Appellant's brief incorrectly states the award for past medical expenses is $8,026.00 rather than $8,063.00 throughout.

determination of whether material evidence can be found in the record that would support the jury's damages award as 'being at or above the lower limit of the range of reasonableness, giving full faith and credit to all of the evidence that tends to support that amount.'" *Id.* (quoting *Poole v. Kroger Co.,* 604 S.W.2d 52, 54 (Tenn. 1980)).

Ms. Adams argues that the jury's award of $8,063.00 irrationally disregards Dr. Hoit's testimony regarding her surgery. However, the jury, as the trier of fact, "is not bound to accept an expert witness's testimony as true, and it may reject any expert testimony that it finds to be inconsistent with the credited evidence or is otherwise unreasonable." *Old Republic Life Ins. Co. v. Woody*, 652 S.W.3d 418, 430-31 (Tenn. Ct. App. 2022) (quoting *Roach v. Dixie Gas Co.*, 371 S.W.3d 127, 150 (Tenn. Ct. App. 2011)). Similarly, the jury may reject expert testimony it "finds to be inconsistent with the credited evidence or that is otherwise unreasonable." *Kempson v. Casey*, No. E2015-02184-COA-R3-CV, 2016 WL 6499283, at *5 (Tenn. Ct. App. Nov. 2, 2016).

Ms. Adams asserts that in the "absence of any serious challenge to charges billed or the necessity of the actual treatment provided, a verdict which indiscriminately discounts medical expenses cannot be sustained." *See Naraghian,* 515 S.W.3d at 328. While Ms. Adams relies on the rule regarding "unimpeached, uncontradicted testimony of a physician in respect to scientific information of which a layman would not be expected to have any reliable knowledge," *Reserve Life Ins. Co. v. Whittemore,* 442 S.W.2d 266, 275-76 (Tenn. Ct. App. 1969), this rule rests upon an absence of conflicting evidence. When there is "expert testimony that tends to establish causation on the one hand, and other testimony by the same experts that tends to diminish the effect of their causation testimony," "the latter testimony goes to the weight to be given the former testimony." *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897, 905 (Tenn. Ct. App. 2001). Indeed, it is "for the jury to sort all of this out." *Id.*

Unlike *Naraghian*, where "medical testimony and treatment costs were largely unchallenged and unimpeached," here, the medical testimony was challenged. *Naraghian,* 515 S.W.3d at 328. As the trial court properly concluded, Mr. Fields's cross-examination rose "to the level of a serious challenge."

Mr. Fields challenged the credibility of Ms. Adams's claimed damages, specifically the $40,039.59 in treatment from Dr. Hoit, by attacking the causation analysis. Dr. Hoit testified that his causation opinion was based on the medical history Ms. Adams provided him, specifically that she "did not have any pain before the accident" and was asymptomatic. However, Ms. Adams admitted on cross-examination that she had a prior back injury in 2004 that required a nerve block, kept her out of work for six to seven months, and caused pain off and on into the future. She further admitted she did not disclose this history to Dr. Hoit or Dr. Thomas.

Dr. Hoit's own testimony reflected tension as to causation. Dr. Hoit testified:

Q: Okay. If she did not have any pain before the accident, but then began to have the pain very soon or immediately thereafter the accident, would that indicate that the motor vehicle accident caused her to have the pain?

A: Right. More likely than not.

Q: Okay. Can you say that, based on her relation of the pain onset after the motor vehicle accident, that would be within a degree of medical certainty that the accident brought on the pain?

A: More likely than not.

Q: And because of that pain, that would be the reason why she needed to have both the nerve blocks and the surgery?

A: Yes.

However, when testifying to the cause of the pain, Dr. Hoit explained:

Q: Okay. And what was the — to be specific, what was the cause of her pain?

A: So, we call [it] foraminal stenosis or pinched nerves in the back.

Q: Okay. Is that something that would be brought on by a motor vehicle accident?

A: No.

Q: It's not?

A: Typically, these foraminal stenoses are degenerative conditions, but they can certainly be worsened by a motor vehicle accident.

Indeed, Dr. Hoit stated on cross-examination that, as a physician, he does not "really care about causality" and just marks down what the patient reports.

Furthermore, Dr. Thomas also testified that based on Ms. Adams's MRI, she "definitely had a degenerative condition" before the accident. He further opined that, absent this degenerative condition, a typical recovery for her acute injuries from the accident "should have lasted six to twelve weeks." Dr. Thomas also testified that without a patient's prior medical records, a physician could only "speculate" as to the patient's pre-

accident condition, and without the prior medical history "a physician might [attribute] causation to the wrong incident." Again, Ms. Adams conceded she had a prior back injury in 2004 that required a nerve block, kept her out of work for six to seven months, and caused pain off and on. She also conceded that she had not disclosed this history to Dr. Hoit or Dr. Thomas.

The initial medical bills testified to by Dr. Thomas from Baptist Hospital, Southern Emergency Physicians, and The Chiro Place totaled $8,263.00 and covered the initial treatments that took place from March through June 2017. This award does not appear to be an arbitrary fraction indicative of a compromise. By awarding an amount within $200 of the initial conservative treatment costs, the jury appears to have accepted Dr. Thomas's testimony that the acute injury would normally have resolved in twelve weeks, while simultaneously rejecting the causal link to the subsequent $40,000 surgery. Thus, the jury appears to have concluded that the later treatment was necessitated by Ms. Adams's undisclosed, preexisting degenerative condition rather than the 2017 accident. Accordingly, the award of $8,063.00 is "at or above the lower limit of the range of reasonableness" supported by the proof. *Poole*, 604 S.W.2d at 54. We conclude that the jury's award was not arbitrary and outside the range of reasonableness.

### III.

Ms. Adams also argues that the verdict regarding fault must be set aside as an improper compromise. "When reviewing an appeal from a jury trial, we will not set aside the jury's findings of fact unless there is no material evidence to support them." *Watson*, 359 S.W.3d at 168. Material evidence is evidence that is "material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422 (Tenn. 2013) (quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (1905)). "[I]f there is material evidence to support the verdict, the verdict and judgment must be affirmed, even if there is testimony or evidence supporting the appellant's position." *Dixon v. Cobb*, No. M2006-00850-COA-R3-CV, 2007 WL 2089748, at *4 (Tenn. Ct. App. July 12, 2007). "On appeal, we must give the verdict 'the most favorable interpretation and . . . give effect to the intention of the jurors if that intention be permissible under the law and ascertainable from the phraseology of the verdict.' . . . The verdict must be upheld if, after examining it, 'the court is able to place a construction thereon that will uphold it.'" *Marshall v. Cintas Corp.*, 255 S.W.3d 60, 73 (Tenn. Ct. App. 2007) (internal citations omitted).

Regarding challenges to allocation of fault, this court has noted:

Challenging a jury's allocation of fault is the legal equivalent of a "Hail Mary" pass. The comparison and allocation of fault is for the jury, and

appellate courts will not second-guess a jury's allocation of fault if it is supported by any material evidence. The process of ascertaining whether evidentiary support exists for a jury's verdict is very deferential toward the verdict.

*Duran v. Hyundai Motor America, Inc.*, 271 S.W.3d 178, 204 (Tenn. Ct. App. 2008) (citations omitted).

Ms. Adams again relies on *Naraghian v. Wilson* to argue that "severely inadequate" damages in a close case create a "strong suspicion" of compromise, yet she overlooks that *Naraghian* rested on "uncontradicted proof," whereas the evidence here was heavily disputed. *See Naraghian*, 515 S.W.3d at 329. Her reliance on *Naraghian* is misplaced. In that case, the plaintiff's medical proof was uncontradicted, leaving the jury no evidentiary basis to discount the claim. Here, however, the medical evidence was not only contradicted, but it was also impeached by Ms. Adams's own failure to disclose her medical history. The jury did not arbitrarily discount her damages as in *Naraghian*; rather, it exercised its prerogative to weigh her credibility and reject the portions of her claim they found unreliable. The jury appears to have credited Dr. Thomas's testimony regarding a limited six-to-twelve-week recovery while attributing the surgery to Ms. Adams's pre-existing degenerative condition rather than the accident.

Furthermore, the apportionment of fault has support in the conflicting testimony, distinguishing this case from *Naraghian*, which featured undisputed causation. While Ms. Adams claimed she was stopped on a single-lane ramp, Mr. Fields testified that she "stopped unexpectedly" for "no reason" on a two-lane ramp, a version supported by his confirmation of Google Maps photos that Ms. Adams claimed were inaccurate. This is not a case where the only possible conclusion is "the whole or nothing," nor is it one where a "plain inference may be drawn that the verdict is a result of a compromise." *High v. Lenow*, 258 S.W.2d 742, 745-46 (Tenn. 1953); *W. T. Grant Co. v. Tanner*, 95 S.W.2d 926, 928 (Tenn. 1936). The record contains material evidence justifying both the damages awarded and the liability split, thereby negating any "strong suspicion" of compromise. Accordingly, the trial court did not err in finding that there was not a compromise verdict, and we find no error in the denial of Ms. Adams's Motion for a New Trial.

IV.

For the aforementioned reasons, we affirm the judgment of the Circuit Court for Shelby County. Costs of this appeal are taxed to the appellant, Jacqueline Adams, for which execution may issue if necessary.

/s Jeffrey Usman
JEFFREY USMAN, JUDGE